UNITED STATES of America, Plaintiff–Appellee,

v.

Hien Hai HOAC, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Hgai Choy CHAN, Defendant–Appellant.

Nos. 91–50193, 91–50206.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1992.*

Decided March 26, 1993.

---

\* The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a), and Ninth Cir.R. 34–4.

Michael J. Brennan, Manhattan Beach, CA; Phillip I. Bronson, Sherman Oaks, CA, for defendants-appellants.

Gregory W. Alarcon, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before CANBY, BOOCHEVER, and THOMPSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

Hien Hai Hoac and Ngai Choy Chan appeal their convictions and sentences resulting from their participation in a scheme to import what proved to be the largest amount of heroin ever seized in the Central District of California. Both appellants raise a host of procedural and evidentiary issues. Hoac argues that the district court erred by excluding his proffered expert testimony, permitting a prosecutorial closing argument that violated his Fifth Amendment rights, admitting an incriminating statement of Chan's, and declining to adjust his base offense level downward for being a minor participant. Chan alleges error in the admission of Hoac's redacted confession, the court's failure to give a statutorily required instruction on volun-

tariness, and the increase of his base offense level for being an organizer, leader, manager, or supervisor. We reject all of these arguments but the last. We therefore affirm both convictions and Hoac's sentence, but we vacate Chan's sentence and remand for resentencing.

## BACKGROUND

On December 21, 1989, the United States Customs Service intercepted a shipment of 1000 cases of lychee nuts, originating from Hong Kong, at Long Beach Harbor. Eight cases were specially marked with the number "8"; these cases were found to contain a total of approximately 55.74 kilograms of heroin with a purity of 77 percent.

The consignee of the shipment was Bea Kea Hong Imports, owned by appellant Hoac. Drug Enforcement Administration (DEA) agents tracked the shipment as it was delivered to a Los Angeles warehouse leased by Hoac. They watched Hoac unload the shipment into the warehouse, with the exception of the eight cases of heroin, which he loaded into a van. The agents then followed Hoac as he drove the van in a counter-surveillance manner. Concerned that Hoac was aware he was being followed, the agents stopped the van and arrested Hoac. Hoac waived his *Miranda* rights and agreed to assist in a controlled delivery of the heroin to its intended recipient, codefendant Chau Ngoc Au. Au was arrested accepting delivery of the eight cases from Hoac.

At the police station, Hoac told DEA Special Agent James Tse that he had met with Chan and codefendant Wai–Chong Leung in Hong Kong in September 1989 to discuss the shipment of lychee nuts. Hoac stated that in December 1989 he had also met with Leung and Au in Vancouver regarding the shipment. He understood that he was to be paid $80,000 for delivery of the boxes to Au. (At the time of his arrest, Hoac had given conflicting responses— $50,000, followed by $10,000 or $20,000— when asked what he expected to be paid for delivering the eight cases to Au.)

On January 7, 1990, the Royal Hong Kong Police took Chan into custody as he was leaving Hong Kong by ferry. A search of Chan's residence revealed documents relating to the lychee shipment and a lease agreement and keys to a Hong Kong warehouse. In the warehouse the police found two boxes of lychee nuts, assorted handsaws and welding tools, and traces of morphine. Chan was informed of his rights and made three statements to Royal Hong Kong Police Officer Wai Yip Ng. He said that Leung had approached him and asked him to open up a trading company to ship lychee nuts to the United States. Chan opened the trading company, obtained a business registration certificate, reserved a shipping date, and arranged a container for transportation. He and Leung cut open the cans in eight boxes of lychee nuts, filled them with heroin, and resealed the cans with a welding tool. They then packed those boxes with 992 untampered boxes into a shipping container. Leung paid Chan $10,000 (Hong Kong) and promised him an additional $50,000– $70,000 if the shipment was successful.

Hoac, Chan, and Au were tried together before a jury.[1] Hoac and Chan were both convicted of conspiracy to import and distribute heroin, conspiracy with intent to distribute heroin, and importation of heroin. Additionally, Hoac was convicted of attempted possession with the intent to distribute heroin and possession with the intent to distribute heroin, and Chan was convicted of distribution of heroin. Hoac was sentenced to 235 months in custody, a $100,000 fine, and five years of supervised release. Chan was sentenced to 292 months in custody, a $250,000 fine, and five years of supervised release.

## DISCUSSION

### I. Appellant Hoac

#### A. *Exclusion of Proffered Expert Testimony*

■ At trial Hoac sought to prove that he lacked knowledge of the heroin by introducing the testimony of Dr. Timothy Law,

---

**1.** Leung, a fugitive at the time of trial, was subsequently apprehended, tried, and convicted.

a clinical forensic psychologist who had examined Hoac on two occasions. The district court conducted a voir dire examination of Dr. Law to ascertain the substance of his testimony. Dr. Law proposed to give his opinion regarding Hoac's intellect and general naivete and to testify about how Chinese cultural factors might lead Hoac to travel long distances for legitimate business dealings. The district court rejected Dr. Law's proposed testimony, stating:

> It seems to me that allowing testimony of this nature, that is the doctor's opinion after two relatively brief meetings, that the defendant struck him as being naive, it would not materially assist the jury with respect to the issues at hand and that Rule 403 would compel its exclusion because it would inject collateral matters with weak probative value and the effect would be to likely to [sic] create collateral issues and jury confusion. So, I am going to reject it.

Hoac argues that the district court's exclusion of Dr. Law's testimony was an abuse of discretion.

■ A qualified expert witness may testify if the witness' "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; *United States v. Peralta*, 941 F.2d 1003, 1009 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1484, 117 L.Ed.2d 626 (1992). Otherwise admissible expert testimony may be excluded under Fed.R.Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay. A trial court's exclusion of expert testimony is reviewed for manifest error or abuse of discretion. *United States v. Rubio–Villareal*, 927 F.2d 1495, 1502 (9th Cir.1991), *vacated in part on other grounds*, 967 F.2d 294 (9th Cir.1992) (en banc); *United States v. Brodie*, 858 F.2d 492, 495 (9th Cir.1988).

Dr. Law had not performed any formal testing on Hoac and had spoken with him on only two occasions lasting approximately one hour each. Dr. Law's knowledge about Hoac thus was limited and it is unlikely that his testimony would have helped the jury. *See United States v. Barnard*, 490 F.2d 907, 913 (9th Cir.1973) (no abuse of discretion in excluding expert testimony where expert's knowledge was limited), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Exclusion of the testimony was not manifest error or an abuse of discretion. *See Rubio–Villareal*, 927 F.2d at 1502 (no abuse of discretion in excluding expert testimony on Mexican culture as relating to defendant's conduct); *United States v. Benveniste*, 564 F.2d 335, 339 (9th Cir.1977) (no abuse of discretion in excluding expert psychiatric testimony on defendant's lack of predisposition to commit criminal offense).

**B.** *The Prosecutor's Closing Argument*

■ In his rebuttal argument, the prosecutor stated to the jury:

> [Hoac's defense counsel] said that the defendant Hoac was used by others. That he was an innocent dupe.... And yet, [Hoac] never said that. He never said he was an innocent dupe. He was fully explained that he was being arrested for narcotics trafficking and he revealed his role. He never said that. He never said that the reason that there was counter surveillance driving is because he didn't know who was behind him. That was argument of counsel.

Later, the prosecutor stated:

> [Hoac] knew exactly what he was doing and he was told what he was being charged with, and he never said, 'Well, I didn't know it was drugs.' He explained his role.

Hoac alleges that these comments violated his Fifth Amendment rights by referring to his failure to testify and his post-arrest, post-*Miranda* silence.

■ The standard of review for prosecutorial comment on a defendant's failure to testify or post-arrest silence is unclear. *Compare United States v. Mares*, 940 F.2d 455, 461 (9th Cir.1991) (claim that prosecutor's closing argument violated defendant's Fifth Amendment rights is reviewed de novo) *and United States v. Schuler*, 813

F.2d 978, 980 (9th Cir.1987) (same) *with United States v. Diaz*, 961 F.2d 1417, 1418 (9th Cir.1992) (admission of comments on post-arrest silence in closing argument after objection is reviewed for abuse of discretion) *and United States v. Makhlouta*, 790 F.2d 1400, 1403 (9th Cir.1986) (prosecutorial comment on partial post-arrest silence in closing argument reviewed for plain error where no objection made at trial). We need not attempt to reconcile these cases, however, because the prosecutor's comments were permissible under either a de novo or an abuse of discretion standard.

 The use for impeachment purposes of a defendant's silence at the time of arrest and after receiving *Miranda* warnings violates due process. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). However,

> a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all....
>
> ....
>
> ... Each of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of 'silence'....

*Anderson v. Charles*, 447 U.S. 404, 408–09, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980) (per curiam). Thus the government may properly point out inconsistencies between a defense presented at trial and a statement given after arrest. *United States v. Ochoa–Sanchez*, 676 F.2d 1283, 1286 (9th Cir.) (prosecutor may probe all relevant evidence bearing on credibility, including "all post-arrest statements and the surrounding circumstances under which they were made, including defendant's failure to provide critical details"), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); *accord Diaz*, 961 F.2d at 1418–19; *Makhlouta*, 790 F.2d at 1403–05. This rationale applies even when the defendant does not testify at trial. *See Klepper v.*

*United States*, 331 F.2d 694, 701 (9th Cir. 1964).

Here, defense counsel presented Hoac's version of events in opening and closing arguments. Hoac's post-arrest statements meet the *Ochoa–Sanchez* requirement of being "arguably inconsistent" with the defense presented at trial, *see Diaz*, 961 F.2d at 1419; *Makhlouta*, 790 F.2d at 1404, notwithstanding that such defense reached the jury's ears through defense counsel rather than the defendant. The government properly responded to defense counsel's argument by referring to Hoac's post-arrest statement.

Nor did the prosecutor's comments impermissibly refer to Hoac's failure to testify. While the Fifth Amendment prevents a prosecutor from commenting on an accused's decision not to testify at trial, *see Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), a prosecutorial statement is only impermissible " 'if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.' " *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir.1987). Moreover, reversal is warranted only " 'where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal.' " *Id.* (quoting *Anderson v. Nelson*, 390 U.S. 523, 524, 88 S.Ct. 1133, 1134, 20 L.Ed.2d 81 (1968) (per curiam)).

The comments to which Hoac objects all referred to what he said or did not say at the time he was arrested, and were in no way phrased to comment on his failure to take the stand or produce evidence at trial. Nor were the prosecutor's comments extensive or heavily emphasized. "[W]hen taken in context and fairly construed, the comments do not appear to have been manifestly intended or to have been of such a character that the jury would necessarily take them as a comment on [Hoac's] failure to testify." *United States v. Soulard*, 730 F.2d 1292, 1307 (9th Cir.1984).

## C. *Admission of Chan's Statement*

At trial Royal Hong Kong Police Officer Ng, who took Chan's statements, testified that Chan had said that he sent the shipment of heroin to Bea Kea Hong Imports. Over defense counsel's objection, the prosecution introduced Chan's handwritten note indicating that the shipment was going to Bea Kea Hong Imports, 1301 South Fremont Avenue, Alhambra, California. Chan never took the stand, and the court instructed the jury that these statements were only admissible against Chan. Hoac argues that the admission of this evidence violated his Sixth Amendment right of confrontation under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Alleged *Bruton* violations are reviewed de novo. *Herd v. Kincheloe*, 800 F.2d 1526, 1529 (9th Cir. 1986).

In *Bruton*, the Supreme Court held that the introduction of a nontestifying codefendant's confession violates a defendant's Sixth Amendment right of confrontation, even if the judge instructs the jury that the confession is admissible only against the nontestifying codefendant. *Bruton*, 391 U.S. at 135–36, 88 S.Ct. at 1627–28. In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court limited *Bruton* to confessions that are facially incriminating, reasoning:

> [I]n this case the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant's own testimony).
>
> Where the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence. Specific testimony that "the defendant helped me commit the crime" is more vivid than inferential incrimination, and hence more difficult to be thrust out of mind.

*Id.* 481 U.S. at 208, 107 S.Ct. at 1707 (footnote omitted). In accordance with *Richardson*, this court has held that a codefendant's statement that does not incriminate the defendant unless linked with other evidence introduced at trial does not violate the defendant's Sixth Amendment rights. *United States v. Sherlock*, 865 F.2d 1069, 1080 (9th Cir. 1989), *amended*, 962 F.2d 1349 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992).

In this case, Chan's confession and note never mentioned Hoac by name; rather, they revealed that Chan shipped the lychee nuts to a certain address in Alhambra, California, which address was linked to Hoac by other evidence. Moreover, the confession and note were not incriminating even when such linkage was established. Hoac never contested that he received the shipment of lychee nuts, but only contended that he was unaware of the contents; Chan's statements led to no inference that Hoac had knowledge of the heroin. Under *Richardson*, the introduction of Chan's statements was not a violation of Hoac's Sixth Amendment rights.

## D. *Hoac's Role in the Offense*

Hoac argues that the district court erred in failing to reduce his base offense level by two as a minor participant pursuant to § 3B1.2(b) of the Sentencing Guidelines. A defendant must prove his status as a minor participant by a preponderance of the evidence. *United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir.1990). Because a defendant's role in the offense is a factual conclusion rather than a legal one, *United States v. Sanchez–Lopez*, 879 F.2d 541, 557 (9th Cir.1989), we review the district court's finding that Hoac was not a minor participant for clear error. *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir.1992).

Guidelines § 3B1.2 provides for a two-level reduction in the base offense level if the defendant was a "minor participant" in the offense and a four-level reduction if he was a "minimal participant." The Application Notes define a minor participant as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Application Note 3. The downward adjustment for minor or

minimal participants is to be used infrequently. *United States v. Gillock,* 886 F.2d 220, 222 (9th Cir.1989) (per curiam).

Hoac describes himself as a "courier" and argues that he is therefore "entitled" to a reduction in base offense level as a minor participant. The record contains ample evidence to support the view that Hoac was more than a mere courier. He owned the trading company and leased the warehouse to which the drugs were delivered, attended two foreign meetings to discuss the shipment with his coconspirators, and was paid a substantial sum for his participation. Because we conclude that Hoac's involvement in the offense was greater than that of a courier, we do not reach the issue of whether one who is solely a courier is automatically entitled to a reduction of his base offense level as a minor participant. *See United States v. Flores–Payon,* 942 F.2d 556, 561 (9th Cir.1991); *United States v. Rigby,* 896 F.2d 392, 395 (9th Cir.1990).[2]

Hoac also argues that the district court should have found him to be a minor participant because he had no ownership interest in the narcotics in his possession. We reject this argument. Hoac received and transported the narcotics in exchange for substantial compensation. Moreover, we have held that a defendant is not entitled to minor participant status merely because he may be less culpable than his codefendants. *United States v. Andrus,* 925 F.2d 335, 337 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 249, 116 L.Ed.2d 204 (1991); *United States v. Rexford,* 903 F.2d 1280, 1282 (9th Cir.1990). The district court's finding that Hoac was not a minor participant was not clearly erroneous.

## II. Appellant Chan

### A. *Admission of Hoac's Statement*

 DEA Special Agent James Tse testified at trial about statements that Hoac made after he was arrested. Although the Assistant United States Attorney had instructed Agent Tse not to refer by name to

Chan, Tse testified on direct examination as follows:

Q: After these rights were given to [Hoac], did you have a further conversation regarding the eight boxes of lychee nuts that contained the heroin?

A: Yes.

Q: Can you tell us what he told you?

A: He told me that another individual was involved. He mentioned that his name was Anom.

"Anom" is an alias of Chan, although that information was never revealed to the jury.

Chan's counsel informed the court in a sidebar that "Anom" was Chan and moved for a mistrial. The court rejected the motion, reasoning that "the jury doesn't know that Anom is Chan and they have no way of perceiving that because there's nothing in the case that links Anom to the name Chan. Plus, he didn't say that Anom was a Hong Kong person, which might have a link." The court concluded that any potential error could be cured by having Tse testify that he had previously misspoken when he mentioned the name Anom. Tse so testified on further direct examination. Tse's testimony thereafter referred only to "individuals" with whom Hoac said he had met. Hoac did not testify at trial, and the court instructed the jury that Hoac's hearsay statements were only admissible against Hoac. Chan argues that the admission of evidence of Hoac's extrajudicial confession at trial was a violation of Chan's Sixth Amendment right of confrontation under *Bruton.*

 Redaction of a nontestifying codefendant's confession, when accompanied by a proper limiting instruction, can prevent any *Bruton* violation. *Richardson,* 481 U.S. at 209, 211, 107 S.Ct. at 1708, 1709; *United States v. Yarbrough,* 852 F.2d 1522, 1537 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). Chan contends, however, that the use of a neutral term such as "individuals" does not avoid a *Bruton* violation because *Richard-*

---

**2.** Other circuits have held that no such correlation exists. *See United States v. McCann,* 940 F.2d 1352, 1359 (10th Cir.1991); *United States v.* *Williams,* 890 F.2d 102, 104 (8th Cir.1989); *United States v. Nevarez–Arreola,* 885 F.2d 243, 245 (5th Cir.1989).

*son* requires the elimination of "not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211, 107 S.Ct. at 1709. We reject this argument as an overly strict reading of *Richardson*. Although the redacted confession in *Richardson* eliminated "any reference to [the defendant's] existence," the Court explicitly left open the question of "the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* at 211 n. 5, 107 S.Ct. at 1709 n. 5.

In *United States v. Long*, 900 F.2d 1270, 1280 (8th Cir.1990), the Eighth Circuit reviewed cases from several circuits and drew a distinction between cases in which the redacted statement alerts the jury to the omission of a name and invites them to fill in the blank and cases in which no such speculation is invited. *Compare United States v. Bennett*, 848 F.2d 1134, 1142 (11th Cir.1988) (*Bruton* violation where use of pronoun "they" in redacted confession clearly implicated codefendants) *and Clark v. Maggio*, 737 F.2d 471, 477 (5th Cir.1984) (*Bruton* violation where redacted confession referred to "the three of us" and police witnesses testified that confessor had provided police with specific names of his accomplices), *cert. denied*, 470 U.S. 1055, 105 S.Ct. 1761, 84 L.Ed.2d 823 (1985) *with United States v. Alvarado*, 882 F.2d 645, 652–53 (2nd Cir.1989) (no *Bruton* violation where reference to "another person" in redacted confession did not indicate that original statement contained actual name), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990) *and United States v. Garcia*, 836 F.2d 385, 390–91 (8th Cir. 1987) (no *Bruton* violation where use of pronoun "someone" did not draw attention to fact that prosecution had name available and purposely omitted it). *See also United States v. Petit*, 841 F.2d 1546, 1556 n. 15 (11th Cir.) (distinguishing redacted confession in which reference to "a friend" could only be understood as referring to specific codefendant from statements that do " 'not provide the slightest hint as to [the other defendants'] particular identities' " (quoting *United States v. Garrett*, 727 F.2d 1003, 1014 (11th Cir.1984), *aff'd on other grounds*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985))), *cert. denied*, 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988).

In this case, Special Agent Tse used the neutral plural term "individuals" and did not indicate to the jury that Chan had given actual names or even had stated how many "individuals" he had met with in Hong Kong. The jury was aware that several people were involved in this conspiracy, including at least one (Leung) who was not being tried with the three defendants. Because "Anom" was never revealed to the jury to be Chan's nickname and was immediately corrected and replaced with the vague plural "individuals," and because the redaction did not invite the jury to "fill in the blanks," Hoac's extrajudicial statement did not facially incriminate Chan; rather, it could become incriminating only when linked with other evidence introduced at trial. *See Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707; *Sherlock*, 865 F.2d at 1079–80. We therefore conclude that there was no *Bruton* error.

B. *Failure to Give a Voluntariness Instruction*

18 U.S.C. § 3501(a) provides in relevant part:

> If the trial judge determines that [a] confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

Thus, where a defendant raises a genuine issue at trial concerning the voluntariness of a statement, the trial court is obligated by statute to instruct the jury concerning the weight to be accorded that statement. *United States v. Fera*, 616 F.2d 590, 594–95 (1st Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980).

Chan's counsel devoted the majority of her cross-examination of the Hong Kong police witnesses and her closing argument to the circumstances of Chan's

statements, which she argued included overly long periods of questioning, sleep deprivation, and unnecessary use of handcuffs and hoods. That she did not ultimately persuade the jury to disregard the statements does not mean that the weight to be given the statements was not in issue. The district court therefore properly recognized that a § 3501(a) instruction was required, although it rejected Chan's proposed instruction [3] in favor of Ninth Circuit Model Criminal Jury Instruction 4.01.[4] Only moments after ruling that it would give the preferred Ninth Circuit instruction, however, the district court failed to give *any* instruction regarding a defendant's extrajudicial statements. Chan argues that this was error requiring reversal of his conviction.

Because Chan did not object to the district court's apparently inadvertent omission when the instructions were given, we review for plain error. *United States v. Boone*, 951 F.2d 1526, 1541 (9th Cir.1991). " 'A plain error is a highly prejudicial error affecting substantial rights.' " *United States v. Dischner*, 960 F.2d 870, 883 (9th Cir.) (quoting *United States v. Giese*, 597 F.2d 1170, 1199 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)), *amended*, 974 F.2d 1502 (9th Cir. 1992). We may reverse Chan's conviction for plain error only if the district court's failure to give the Ninth Circuit instruction "so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived [Chan] of a fair trial." *United States v. Smith*, 962 F.2d 923, 935 (9th Cir.1992). "Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986).

Although we have stated that improper jury instructions will rarely justify a finding of plain error, *id.* at 1367–68, we are necessarily more cautious when the trial court omits an instruction that is unequivocally mandated by statute. We are also aware that several circuits have held that a failure to issue a § 3501(a) instruction when voluntariness is in issue is plain error *per se*, focusing their analysis on whether the error was harmless beyond a reasonable doubt. *See United States v. McLernon*, 746 F.2d 1098, 1118 (6th Cir.1984); *United States v. Sauls*, 520 F.2d 568, 570 (4th Cir.), *cert. denied*, 423 U.S. 1021, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975); *United States v. Barry*, 518 F.2d 342, 347 (2nd Cir.1975); *United States v. Bernett*, 495 F.2d 943, 962 (D.C.Cir.1974). The Supreme Court, however, has clearly stated that a *per se* approach to plain error under Fed. R.Crim.P. 52(b) is improper. *United States v. Young*, 470 U.S. 1, 16–17 n. 14, 105 S.Ct.

---

**3.** Chan requested the following instruction:

Evidence relating to any statement, or act or omission, claimed to have been made or done by a defendant outside of court, and after a crime has been committed, should always be considered with caution and weighed with great care; and all such evidence should be disregarded entirely, unless the evidence in the case convinces the jury beyond a reasonable doubt that the statement or act or omission was knowingly made or done.

A statement or act or omission is "knowingly" made or done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

. . . .

If after considering the evidence you determine that a statement, act or admission [sic] was knowingly made or done, you will give it such weight as you feel it deserves under the circumstances.

**4.** The Ninth Circuit instruction provides:

You have heard testimony that the defendant made a statement. It is for you to decide (1) whether the defendant made the statement and (2) if so, how much weight to give to it. In making those decisions, you should consider all of the evidence about the statement, including the circumstances under which the defendant may have made it.

9th Cir.Crim.Jury Instr. 4.01 (1992). This instruction satisfies the requirements of § 3501(a), and there was no error in rejecting Chan's alternative instruction. *United States v. Solomon*, 825 F.2d 1292, 1295 (9th Cir.1987) (defendant not entitled to any particular form of instruction so long as instructions given fairly and adequately cover defendant's theories of defense), *cert. denied*, 484 U.S. 1046, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988).

1038, 1046–1047 n. 14, 84 L.Ed.2d 1 (1985). The reason is that "plain error" is not merely a question of obviousness. An error that rises to the level of reviewability under Rule 52(b) must not only affect substantial rights, but must also have had "an unfair prejudicial impact on the jury's deliberations." *Id.* at 17 n. 14, 105 S.Ct. at 1047 n. 14. Any such error must necessarily be harmful. The alternative would be to have "appellate courts indulge in the pointless exercise of reviewing 'harmless plain errors'—a practice that is contrary to the draftsmen's intention behind Rule 52(b)." *Id.*

██ Without referring to the Supreme Court's words in *Young*, some of our cases have indicated that a plain error can also be harmless error. *See United States v. Payne*, 944 F.2d 1458, 1466 n. 6 (9th Cir. 1991) (discussing the split within this circuit), *cert. denied,* — U.S. ——, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992). The Supreme Court's analysis in *Young* is dispositive and is well supported. The language of Rule 52, which defines harmless error as one "which does not affect substantial rights" and plain error as one "affecting substantial rights," is logically read to suggest that the two are mutually exclusive. *See United States v. Jarrad*, 754 F.2d 1451, 1457 (9th Cir.) ("Where the alleged error is harmless, plain error does not exist and review is unwarranted."), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985); *accord United States v. Loya*, 807 F.2d 1483, 1492 (9th Cir.1987). Moreover, because plain error requires a high probability that the error materially affected the jury's verdict, *United States v. Bryan*, 868 F.2d 1032, 1039 (9th Cir.), *cert. denied,* 493

U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989), it is difficult to see how such an error can be held harmless on the basis of a probability that the error did *not* materially affect the verdict, *see United States v. Valle–Valdez*, 554 F.2d 911, 915–16 (9th Cir.1977).[5] We can think of no error prejudicial enough to cause us to overlook a failure to object that would not cause us to reverse. *See Kubat v. Thieret*, 867 F.2d 351, 372 (7th Cir.) ("[W]hen a court, on direct appellate review, finds that an error rises to the level of plain error, reversal is automatic."), *cert. denied,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). Our search for a "harmless plain error" leads us to conclude that there is no such animal.[6]

██ Our plain error analysis must therefore turn not on any *per se* rule, but on whether the district court's failure to give the required instruction, under all of the circumstances presented, was so prejudicial that it tainted the verdict or deprived Chan of a fair trial. We conclude that it was not. Chan's confession was corroborated by the physical evidence, including his ownership of the company that shipped the lychees and his possession of documents relating to the shipment as well as the lease and keys to the packing warehouse. Further evidence indicated that Chan was repeatedly read his rights, signed three separate statements after being permitted to read and correct them, and was given approximately seven hours in a cell to sleep between interviews. All insinuations by Chan's counsel of threats and intimidation were denied on the stand by

---

**5.** The explanation for some of our cases to the contrary, we believe, is the tendency to give "plain" its ordinary meaning of "obvious." *See, e.g., United States v. Wilson*, 690 F.2d 1267, 1274 (9th Cir.1982) ("[A]n error unobjected to at trial may be so plain as to warrant review ... yet the error may be harmless and, therefore, not justify a reversal."), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983); *see also United States v. Gaudin*, 986 F.2d 1267, 1270–1273 (9th Cir.1993); *United States v. Mouzin*, 785 F.2d 682, 693 (9th Cir.), *cert. denied,* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986); *United States v. Smeaton*, 762 F.2d 796, 799 (9th Cir.1985). In

*Young,* the Supreme Court made clear that this tendency leads to error.

**6.** In holding that all plain errors are harmful, we do not imply that all harmful errors are plain. The Supreme Court has made clear that "Rule 52(b) is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982); *see id.* at 180, 102 S.Ct. at 1600; *Young,* 470 U.S. at 15, 105 S.Ct. at 1046.

the Hong Kong Police witnesses,[7] whose trustworthiness the jury was instructed to weigh by the court's general credibility instruction. *See United States v. Williams,* 484 F.2d 176, 178 (8th Cir.) (per curiam) (omission of § 3501(a) instruction not plain error where jury instructed generally on credibility and weight to be accorded witness testimony), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). Because we do not believe that any reasonable juror could have disregarded Chan's confession had the § 3501(a) instruction been given, we are convinced that there is no reasonable possibility that the error had "an unfair prejudicial impact on the jury's deliberations." *Young,* 470 U.S. at 17 n. 14, 105 S.Ct. at 1047 n. 14. The district court's failure to give the § 3501(a) instruction, although amounting to error, was therefore "not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Id.* at 16, 105 S.Ct. at 1046.

### C. *Chan's Role in the Offense*

Finally, Chan argues that the district court erred by increasing his base offense level by two for his aggravating role as "an organizer, leader, manager, or supervisor" of the heroin conspiracy under U.S.S.G. § 3B1.1(c). To justify a two-level increase under § 3B1.1(c), the government must prove by a preponderance of the evidence that the defendant had an aggravating role in the offense. *See United States v. Mares–Molina,* 913 F.2d 770, 773 (9th Cir.1990). Whether a defendant was "an organizer, leader, manager, or supervisor" is a question of fact that is reviewed for clear error. *Id.*

In *Mares–Molina,* this court adopted a First Circuit holding that for an upward adjustment under § 3B1.1 " 'the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime.' " *Id.* (quoting *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990)). Applying this standard to a defendant who knowingly leased his warehouse to individuals who used it to store cocaine, we held that the district court's finding that the defendant was an organizer or manager was clearly erroneous. *Id.* 913 F.2d at 774; *see also United States v. Koenig,* 952 F.2d 267, 274 (9th Cir.1991) (applying *Mares–Molina* standard, defendant was "manager" because there was evidence that he played some role in directing coconspirators). Although several cases after *Mares–Molina* have upheld the two-level upward adjustment without explicitly applying the "control over others" standard, all such cases arguably met this test. *See, e.g., United States v. Schubert,* 957 F.2d 694, 696 (9th Cir.1992) (defendant was "organizer" because he provided business associate with money to purchase drugs); *United States v. Hernandez,* 952 F.2d 1110, 1119 (9th Cir.1991) (defendant was "manager" because he recruited, hired, and instructed workers in counterfeiting scheme), *cert. denied,* —— U.S. ——, 113 S.Ct. 334, 121 L.Ed.2d 252 (1992).

We do not believe that the district court, properly applying the *Mares–Molina* standard, could have found by a preponderance of the evidence that Chan was "an organizer, leader, manager, or supervisor" under § 3B1.1(c). At sentencing the government argued that the two-level increase was justified because Chan opened the trading company to export the heroin, reserved a shipping date and arranged for a shipping container, assisted Leung in placing the heroin in the cans and loading the shipping container, was promised $50,000–$70,000 by Leung if the shipment was successful, and at the time of his arrest possessed the rental contract and keys for the packing

---

7. The following is a representative sample of Chan's cross-examination of Officer Ng:

Q. Mr. Ng, isn't it true that at the beginning of interview [sic] Officer Chung told Mr. Chan that he has [sic] going to die?
A. No.
Q. Isn't it true that he threatened him and said, "You will die sooner"?

A. No.
Q. Following that trip, sir, isn't you true [sic] Mr. Chan said, "I will sign anything you want me to"?
A. No.

warehouse. While all of these facts suggest that Chan was perhaps one of the more culpable defendants, they do not indicate that he exercised "control over others" or was "responsible for organizing others" so as to justify an increase under § 3B1.1(c). Moreover, the court justified the two-level increase by stating: "[Chan] didn't organize the whole scenario ... I mean, it seems that Mr. Leung did that.... But [Chan] implemented the importation and in that, utilized organization skills." Organizing the importation, however, is not the same as organizing other conspirators and does not satisfy *Mares–Molina.*

Because no evidence indicated that Chan exercised control over other defendants or was responsible for organizing them,[8] *Mares–Molina* requires us to hold that the district court's finding that Chan was "an organizer, leader, manager, or supervisor" was clearly erroneous. We therefore vacate Chan's sentence and remand for resentencing in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.

---

**8.** The only evidence that could arguably support an increase under § 3B1.1(c) is Chan's statement that he and Leung were partners. We conclude that this alone is insufficient to satisfy *Mares–Molina.*