15 F.3d 1094
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Manuel Antonio VALENCIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria Marleny LOAIZA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juana LOPEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel Antonio CARMONA-ARROYAVE, Defendant-Appellant.
 Nos. 92-30458, 92-30459, 92-30490 and 93-30015.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided Jan. 28, 1994.
 
 1
 Before: BROWNING, SCHROEDER, and HALL, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 I. FOURTH AMENDMENT CLAIMS
 
 3
 The search of Loaiza's purse was valid. The police had a warrant to search the motel room and it was "reasonable to believe that the [purse] could conceal items of the kind portrayed in the warrant." U.S. v. Gray, 814 F.2d 49, 51 (1st Cir.1987) (citing U.S. v. Ross, 456 U.S. 798, 820-21 (1982)); see also U.S. v. Disla, 805 F.2d 1340, 1346 (9th Cir.1986). Independent probable cause was not required--Loaiza was not a mere visitor to the motel room, but an occupant. U.S. v. Ayers, 924 F.2d 1468, 1479 (9th Cir.1991); U.S. v. McLaughlin, 851 F.2d 283, 287 (9th Cir.1988). She rented and slept in the room, and probable cause for the warrant was based on police suspicions that she as well as Carmona-Arroyave were using it for drug distribution.
 
 
 4
 Loaiza's arrest was also supported by probable cause. "The test for probable cause is whether the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." U.S. v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989). The arresting officers knew Loaiza (1) was present at meetings with the other suspects in the case, (2) purchased postal money orders with drug-related currency, (3) engaged in "counter-surveillance" activities while in the post office and while driving in Portland with the other suspects, (4) attempted to hide Carmona-Arroyave's identity when she rented the car and the motel room and (5) accompanied Carmona-Arroyave to the store to buy "tupperware-type" containers used to prepare cocaine for distribution. These facts were sufficient to justify the arrest when viewed together in light of the officers' "experience in narcotics investigations." U.S. v. Knox, 888 F.2d 585, 587 (8th Cir.1989); see also Guam v. Ichiyasu, 838 F.2d 353, 357 (9th Cir.1988).
 
 
 5
 Loaiza's statements to the police were legally obtained. Since the search and arrest were valid, they did not taint the statements.
 
 II. FIFTH AMENDMENT CLAIM
 
 6
 The district court's conclusion that Loaiza knowingly and intelligently waived her Miranda rights is not clearly erroneous. Collazo v. Estelle, 940 F.2d 411, 416 (9th Cir.1991) (determination whether Miranda waiver was knowing and intelligent reviewed for clear error). The district court found no evidence of coercive police conduct and the record reflects none. Derrick v. Peterson, 924 F.2d 813, 821 (9th Cir.1990) (coercive police conduct a prerequisite for finding a Miranda waiver involuntary). The district court also found (1) Loaiza was advised of her rights in Spanish, (2) the officer asked her after he read each right whether she understood it and she indicated verbally that she did, (3) Loaiza had been in the United States for several years and spoke English reasonably well and (4) Carmona-Arroyave was in the room and could have helped her had she not understood.
 
 III. EXCLUSION OF EXPERT TESTIMONY
 
 7
 The district court did not err by excluding expert testimony on the role of women in Hispanic culture. "A qualified expert witness may testify if the witness' specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." U.S. v. Hoac, 990 F.2d 1099, 1103 (9th Cir.1993) (citations and internal quotations omitted). A cultural anthropologist may possess "specialized knowledge" that can assist the jury in some cases. Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 481 (9th Cir.1991). However, a trial court's decision to exclude expert testimony will be reversed only for manifest error or abuse of discretion. Hoac, 990 F.2d at 1103. Since the expert offered as a witness had spoken to Loaiza on only one occasion for 90 minutes, the trial court could reasonably conclude he was not sufficiently familiar with Loaiza's background and personality to assist the jury in understanding her state of mind.
 
 IV. SENTENCING
 A. Base Offense Level
 
 8
 The district court did not clearly err in finding Carmona-Arroyave responsible for 17.5 kilograms of cocaine. See U.S. v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992). The notebook seized on February 7, 1991 documented the sale of over 10,000 grams of cocaine on the east coast, and there was sufficient evidence to connect the notebook with Carmona-Arroyave. The notebook contained a column of sales figures headed "Ma.," another column headed "Ga." and several east coast addresses, including the number of a Florida post office box rented by Loaiza. An expert witness testified that (1) the format and use of abbreviations in the notebook were consistent with those used in drug records, (2) "Ma." was a common Spanish abbreviation for "Maria" (Loaiza's first name) and (3) "Ga." probably referred to "Gabriel," another of Carmona-Arroyave's sales people who initially distributed in Portland but who went to New York after being "sent away" by Carmona-Arroyave. The apartment where officers found the ledger was rented to Carmona-Arroyave and contained 96 grams of cocaine (for which Carmona-Arroyave accepted responsibility), over $10,000 in currency, packaging material and drug paraphernalia. See U.S. v. Tabares, 951 F.2d 405, 410 (1st Cir.1991); see also U.S.S.G. Sec. 2D1.1, comment. (n. 12) ("[T]he court may consider, for example, ... financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved."); U.S. v. Gonzalez-Sanchez, 953 F.2d 1184, 1186 (9th Cir.1992) ("[W]here the amount of a drug seized does not reflect the scale of the offense, the sentencing judge may approximate the quantity involved, considering, inter alia, the price generally obtained for the drug and the defendant's similar drug transactions.").[1]
 
 B. Acceptance of Responsibility
 
 9
 The district court properly denied Carmona-Arroyave and Lopez additional one-point reductions for acceptance of responsibility under Sec. 3E1.1(b)(2) of the Guidelines.[2] Carmona-Arroyave failed to provide "complete" information about his involvement in the crime or timely notify authorities of his intention to plead guilty. Although he admitted a great deal about his role in the offense, he also lied about the scope of the distribution ring. When asked what the police would find at the other locations where search warrants were being executed on the day of his arrest, he said they would find "just a little bit" of cocaine. The officers found over 3 kilograms. In addition, he forced the government to prepare for trial by waiting to plead guilty until the day his trial was to begin.
 
 
 10
 Lopez also failed to give "complete information" to police after her arrest.[3] Although she initially denied any involvement in the conspiracy, she admitted her involvement after Carmona-Arroyave convinced her to cooperate with the police. However, she omitted a great deal of information, including her involvement in the collection of receipts from drug sales, the maintenance of a record of such receipts, and her money laundering activities.[4]
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3. The parties are familiar with the facts, and we will not restate them here
 
 
 [1]
 We address Valencia's claim that the district court erred in setting his base offense level in a separate, published opinion
 
 
 [2]
 The parties do not agree on the proper standard for reviewing the decision to grant or deny this additional one-point reduction under Sec. 3E1.1(b). The First Circuit and Eighth Circuits have held the decision should be reviewed for clear error. U.S. v. Schau, 1 F.3d 729, 731 (8th Cir.1993); Donovan, 996 F.2d at 1346; U.S. v. Donovan, 996 F.2d 1343, 1346 (1st Cir.1993). We need not resolve this question since the district court's conclusion was proper regardless of the standard of review
 
 
 [3]
 Lopez concedes she is not entitled to a reduction for timely notifying authorities of her intention to plead guilty
 
 
 [4]
 Lopez argues the district court's findings of fact on this issue were not sufficiently specific. The basis for the district court's conclusions are clear from the record. The Guidelines do not require more. U.S. v. Rigby, 896 F.2d 392, 394 (9th Cir.1990) (findings of fact adequate where "record at the sentencing hearing reflects no confusion ... as to what the district court decided")