76 F.3d 389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jaime HUERTA, Defendant-Appellant.
 No. 94-30157.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 5, 1995.*
Decided Jan. 22, 1996.
 
 1
 Before: D.W. NELSON and NOONAN, Circuit Judges; TANNER, District Judge**.
 
 
 2
 MEMORANDUM***
 
 
 3
 Jaime Huerta (Jaime) appeals his five concurrent sentences of 168 months in prison for his convictions of conspiracy to distribute illegal drugs, distribution of illegal drugs, and three counts of the use of a communication facility to further a drug conspiracy. The sentence was based on a finding of a quantity of drug sufficient for a base offense level of 30 and a three-level enhancement for being a manager or supervisor in the drug conspiracy under the federal sentencing guidelines (the Guidelines). Jaime challenges both findings underlying his sentence. We vacate Jaime's sentence in part and remand for resentencing.
 
 FACTS AND PROCEEDINGS
 
 4
 On April 15, 1993, Jaime, his brother Carlos Huerta, and Fidel Perez were indicted on one count of conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. On June 16, 1993, a ten-count superseding indictment was filed, naming Grant Coombs as a part of the conspiracy and adding counts against Jaime for distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and for use of a communication device to facilitate drug trafficking in violation of 21 U.S.C. § 843(b).
 
 
 5
 On October 1, 1993, a jury found Jaime guilty of all five counts with which he was charged. Codefendants Carlos Huerta, Jorge Huerta (no relation), and Fidel Perez were also found guilty as charged in the superseding indictment. Grant Coombs pleaded guilty to his conspiracy charge to distribute cocaine and marijuana along with Jaime, Carlos Huerta, Fidel Perez, and Jorge Huerta.
 
 
 6
 On April 14, 1994, Judge Lodge held Jaime's sentencing hearing and reviewed the December 13, 1993, pre-sentence report (the "Report") and written objections to the Report from the government and from Jaime's counsel. The court determined that Jaime had agreed with his brother Carlos to sell cocaine and marijuana for nine months beginning in June 1992; thus, transactions by Carlos during that time were considered in the court's approximation of Jaime's total drug quantity for which he could be held responsible. The court multiplied by nine the average monthly amount of drug sales calculated in the Report to yield an amount of 865.47 kilograms of marijuana and a base offense level of 30. The court also adopted a three-level enhancement for Jaime's role in the conspiracy, which the court found to have been a "manager or supervisor" in a criminal activity that involved five or more participants or was otherwise extensive. The 30-base level and the three-level enhancement, when combined with Jaime's criminal history category of II, yielded a sentencing range of 151 to 188 months. The court sentenced Jaime to five 168-month terms, to be served concurrently and to be followed by 5 years of supervised release.
 
 
 7
 Jaime timely filed a notice of appeal on April 22, 1994.
 
 ANALYSIS
 
 8
 As a conspirator in a drug conspiracy, Jaime is to be sentenced "on the basis of the quantity of drugs which he reasonably foresaw or which fell within 'the scope' of his particular agreement with the conspirators." United States v. Petty, 992 F.2d 887, 890 (9th Cir.1993). The Guidelines require the district court to "approximate" the quantity of controlled substance where, as in this case, there is no drug seizure effected. U.S.S.G. § 2D1.1 note 12. Although the Report on which the district court relied is not a model of mathematical clarity in explaining its computation of Jaime's average monthly drug sales, the statements of Monte Joe Brown, John McCauley, Grant Coombs, and Ben Tomchak provided evidence of typical transactions in controlled substances by Jaime, on which the court could approximate the amount of drugs in Jaime's conspiracy. Id. These statements, some of which were made out of court and all of which were made by witnesses who had used or sold the drugs after purchasing them from Jaime, were not beyond challenge in terms of their disinterestedness, but they were not so devoid of indicia of reliability as to violate due process. See United States v. Ponce, 51 F.3d 820, 828 (9th Cir.1995). The use of out-of-court statements therefore was not improper. Id.; U.S.S.G. § 6A1.3. Finding that the district court's reliance on the Report's suggested monthly average was not clearly erroneous, we do not disturb this portion of the court's sentence.
 
 
 9
 However, based on our review of the record, we find the district court clearly erred in finding that Jaime was a manager or supervisor under U.S.S.G. § 3B1.1(b). The record does not show whom, if anyone, Jaime supervised or managed in his particular drug conspiracy. At the sentencing hearing, the district court adjusted upward Jaime's base offense level under U.S.S.G. § 3B1.1(b) on a finding that
 
 
 10
 [W]hile this conspiracy involved a number of individuals, it was true that each of the various groups [sic] were kind of operating within the conspiracy, but setting their own prices, obtaining monies from different sources, moving without any direction from you and Carlos, on many occasions and I'm not sure the evidence supports the finding that you dictated prices, but there was no question [sic] but you were a manager and supervisor and the people looked to you for direction and supplies and guidance in this conspiracy.
 
 
 11
 This finding does not identify the persons who "looked" to Jaime for direction; nor is it a finding that, in fact, Jaime gave "direction" and "guidance." In the very same sentence the court has found that the various groups "moved without any direction" from Jaime. The court's findings, therefore, do not support its conclusion.
 
 
 12
 In order to be a supervisor or manager under § 3B1.1(b), one must have exercised "some degree of control or organizational authority over others" in the criminal activity. United States v. Koenig, 952 F.2d 267, 273 (9th Cir.1991) (quoting United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990)). The sentencing adjustment is warranted only if "the defendant ... managed or supervised at least one other participant--that is, a person who was criminally responsible for the commission of the offense." United States v. Helmy, 951 F.2d 988, 997 (9th Cir.1991), cert. denied, 504 U.S. 945 (1992).
 
 
 13
 The record shows that Jaime was involved in a typical distributor situation, in which one drug dealer buys and then sells drugs to others, who in turn sell primarily to users on the street. Yet being a distributor does not necessarily mean one has control over his purchasers who later resell on the street; nor does being a distributor necessarily mean that one has organizational authority over his purchasers to sell drugs for him. See United States v. Brown, 944 F.2d 1377, 1381 (7th Cir.1991); see also United States v. Hoac, 990 F.2d 1099, 1111 (9th Cir.1993) (holding that § 3B1.1 requires more than simply organizing the importation of drugs), cert. denied, 114 S.Ct. 1075 (1994).
 
 
 14
 In fact, the government argued in this case at the sentencing hearing that "for Jaime Huerta, once the cocaine leaves his hands he could care less where it goes." In addition, none of the several witnesses who testified of having made drug purchases from Jaime--Monte Joe Brown, John McCauley, Grant Coombs, and Ben Tomchak--claimed that Jaime enlisted or directed them to sell drugs for him. The closest possibility is Ben Tomchak's account: Tomchak testified that Jaime hired him for a wood cutting business on a wage of $75 per day; that on the first or second day of work, Jaime asked him if he knew anyone who wanted marijuana, to which he responded that he might know some people; that he later told Jaime that he had an interested buyer and that a deal was set up at a designated location, the Common Sense Store; that he went with the interested buyer to meet Jaime and purchased one pound of marijuana from Jaime on behalf of the buyer; and that after the initial purchase, he continued to buy marijuana from Jaime, for which he usually paid Jaime after selling the drugs to others. These facts indicate that Tomchak purchased marijuana from Jaime; in and of themselves, however, they do not indicate that Tomchak's purchases of marijuana were organized or directed by Jaime, or that Jaime dictated Tomchak's use of the marijuana after those purchases. The record suggests that Tomchak was free to do whatever he wanted with the marijuana he purchased, and that the two men met as equal participants in the purchases, rather than at Jaime's control or bidding.
 
 
 15
 Without a finding that Jaime had control over a specific individual who was a criminally responsible participant in Jaime's drug trade, the district court clearly erred in finding Jaime a manager or supervisor. The purpose of the sentencing adjustment under § 3B1.1 is to punish a convicted defendant more severely to the extent that he was more responsible--relative to other participants in the offense--for the commission of the offense. U.S.S.G. § 3B1.1 (background note). Where, however, the offense is committed "by a single individual or by individuals of roughly equal culpability," no adjustment is warranted. Helmy, 951 F.2d at 997 (discussing U.S.S.G. § 3B1.4).
 
 
 16
 Accordingly, we VACATE Jaime's sentence in part and REMAND for resentencing in accordance with this opinion.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 The Honorable Jack E. Tanner, United States District Judge, Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3