78 F.3d 595
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Apolonio HUERTA, Defendant-Appellant.
 No. 95-30034.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 14, 1995.*
Decided March 7, 1996.
 
 Before: BOOCHEVER, FERNANDEZ, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Huerta challenges the two sentencing enhancements imposed.
 
 
 3
 I. Gun enhancement.
 
 
 4
 Huerta argues that the district court erred in enhancing his sentence for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). He had no narcotics in his possession when he was arrested with the gun in his waistband. He argues that there was not a preponderance of evidence that he was intending to trade narcotics for guns, especially considering that he had no narcotics with him at the alleged time and place for the trade. The district court's finding that a defendant possessed a firearm during the commission of a narcotics offense is reviewed for clear error. United States v. Pitts, 6 F.3d 1366, 1372 (9th Cir.1993).
 
 
 5
 Huerta pleaded guilty to count 4 of the indictment. Count 4 charges him with attempting to trade cocaine for machine guns on February 3:
 
 
 6
 That on or about February 3, 1993, in the District of Idaho, Defendants DAN KILLINGER and APOLONIO HUERTA attempted to possess a machine guns [sic] by having DAN KILLINGER attempt to trade Special Agent Mike Lusk two ounces of cocaine for two firearms, ... in violation of Title 18, United States Code, Sections 922(o)(1) and 2.
 
 
 7
 That is the occasion when he was arrested with a gun in his trousers. At the change of plea, the prosecutor set out the basis in fact, to which Huerta agreed:
 
 
 8
 MR. McHUGH: With regards to Count 4, that charge alleges that Mr. Huerta attempted to possess two machine guns. Our evidence would show that Dan Killinger negotiated with a confidential informant and Mike Lusk, an agent with the Bureau of Narcotics--State Bureau of Narcotics, for the trade first $2,000, then that was changed to 2 ounces of cocaine, then two machine guns that Agent Lusk represented to have in his position. [sic]. Those negotiations came to a conclusion on February 3, when Mr. Killinger met Agent Lusk and the informant, Agent Lusk showed Killinger the machine guns. In a subsequent meeting Killinger pointed to a vehicle in which Apolonio Huerta was driving and indicated that was his source for the cocaine. And there is also testimony from Agent Lusk, Dan Killinger called on prior occasions attempting to locate somebody by the name of Polo, that later in the conversation Killinger indicated that his source was nervous and that he wanted to go over to Jerome County to complete the transaction.
 
 
 9
 That Killinger got in the backseat of Agent Lusk's vehicle, they drove over to where Apolo Huerta was parked and they followed Apolonio Huerta out of the parking lot at the Blue Lakes Mall in Twin Falls, Idaho and followed Apolonio Huerta out of town until Apolonio Huerta stopped; at that point he was arrested. He later admitted, in an interview, to his participation in attempting to get the automatic weapons, but denied any involvement in narcotics trafficking.
 
 
 10
 THE COURT: Mr. Huerta, do you agree with that summary?
 
 
 11
 DEFENDANT APOLONIO HUERTA: Yes.
 
 
 12
 THE COURT: Mr. Huerta, do you agree with the prosecutor's summary as to what you did as to that count?
 
 
 13
 DEFENDANT APOLONIO HUERTA: Yes.
 
 
 14
 The district judge made a finding of fact, based on the evidence he had heard at trial of a codefendant, the presentence report, and the plea of guilty to count 4. The finding was that "the transaction that was arranged was drugs for guns":
 
 
 15
 Mr. Huerta, the Court in this case is probably on top of the evidence a little more than I might have been if everyone had entered pleas of guilty because we actually did in fact have a second trial.... So the Court has had a chance to listen to the tapes and be familiar with the evidence that was presented by the witnesses....
 
 
 16
 ... Your second--your next objection was the enhancement for guns. Of course, in the trial we had that again covered specifically because of Mr. Killinger. It was true that Mr. Killinger was found not guilty, but it was for, in my judgement, obvious reasons that had nothing to do with the actual transaction was out there. While it is true that the two ounces of cocaine were not found on you, there is no question in the Court's mind but what the transaction that was arranged was drugs for guns. And as I just pointed out, based upon the history of your case and the evidence that was presented, there is no question but what you had the ability to traffic in the quantity we were talking about, two ounces, and that you had done so on a regular basis, and that the intent was drugs for guns. You also pled guilty to that offense, which is an admission of the material elements of the charge.
 
 
 17
 The guideline provides that the enhancement applies if a gun is "possessed," unless it is "clearly improbable that the weapon was connected with the [drug] offense." U.S.S.G. § 2D1.1(b)(1), Application Note 3; see also Smith v. United States, 113 S.Ct. 2050 (1993) (exchange of guns for narcotics constitutes use of firearm during and in relation to drug trafficking crime); cf. Bailey v. United States, 116 S.Ct. 501, 508 (1995) (active employment of a firearm, constituting "use," includes "bartering").
 
 
 18
 Huerta argued to the district court, as he does to us, that the machine gun purchase was to be made with money, not drugs, and that the evidence from his codefendant, Killinger, should not be believed. The district court responded that it had heard the evidence at the coconspirator's trial and had found that the transaction was drugs for guns, not money for guns.
 
 
 19
 It is apparent that Huerta was not taken by surprise when the district court referred to the trial proceedings. His argument at sentencing made it clear that he knew that the credibility of Killinger was important, and he made no objection to the district court's reliance upon the trial testimony, although he did contest Killinger's credibility. Under those circumstances it was proper for the district court to rely upon the trial testimony. See United States v. Bacerra, 992 F.2d 960, 966 (9th Cir.1993); United States v. Notrangelo, 909 F.2d 363, 365 (9th Cir.1990). Huerta did not place any other evidence before the district court.
 
 
 20
 We understand Huerta's argument that when he was caught he did not have narcotics with him, so he could hardly be attempting to trade narcotics for guns. The argument is interesting, but it is one for the trier of fact. Huerta might have meant to negotiate the price and quantity a little more, to structure the exchange in pieces to avoid a "ripoff," to stall while he evaluated the prospective trader for signs of being a "narc," to stall the transaction until he could get the promised drugs, or even to await the bringing of the drugs by another one of his confederates. In other words, the mere fact that he did not have drugs with him at the moment of his arrest does not make the district court's finding clearly erroneous.
 
 
 21
 II. Organizer enhancement.
 
 
 22
 Huerta also argues that the district court erred in imposing the enhancement for an "organizer, leader, manager or supervisor" under U.S.S.G. § 3B1.1(c). He argues that all he did was organize importation of drugs, not organize the efforts of other people, so the enhancement was inappropriate under United States v. Hoac, 990 F.2d 1099 (9th Cir.1993). Whether Huerta was an "organizer, leader, manager, or supervisor" under U.S.S.G. § 3B1,1(c) is reviewed for clear error. United States v. Hoac, 990 F.2d 1099, 1110 (9th Cir.1993).
 
 
 23
 Huerta is correct that for the enhancement to apply, "defendant must have been the organizer, leader, manager, or supervisor of one or more participants." U.S.S.G. § 3B1.1, commentary at n. 2. See also Hoac, 990 F.2d at 1111 ("Organizing the importation, however, is not the same as organizing other conspirators ...").
 
 
 24
 The district court made a finding of fact that Huerta "did control the activity of others":
 
 
 25
 As far as your role in the offense, again the Court does not have to find a conspiracy to find you were acting as the leader or manager. In fact, the conspiracy charge against you was dismissed, but in the actual evidence of the trial of this case, Jose was found guilty of conspiracy and his involvement or activity was a lot less than yours on the basis of the evidence presented.
 
 
 26
 The question really is whether under relevant conduct there is a basis for establishing your role in the offense as being what it was, and relevant conduct under the sentencing guidelines, it is pointed out that a jointly undertaken criminal activity is a criminal plan, scheme, endeavor, or enterprise undertaken by defendant in concert with others, whether or not charged as a conspiracy. In this case the record is very clear about your role and the fact that you did control the activity of others and that you participated in a number of transactions yourself.
 
 
 27
 Based on those findings and except as modified here today or where a determination has been made that no such finding is necessary because the matter controverted will not be taken into account in sentencing, the Court finds that the facts otherwise set forth in the presentence report to be true and accurate ...
 
 
 28
 There was evidence to support this finding. For the transaction in count 14, to which he pleaded guilty, Huerta called his brother, and shortly thereafter, his brother arrived with the cocaine to sell to a waiting customer. For an uncharged purchase involving Tracy Oates, Oates and another went to California for the cocaine and brought it back to one of Huerta's brothers, Huerta bought it from the brother, and then Huerta traveled to California and paid the supplier there. The court could conclude that he organized the other people in the deal to take the greater risks, while he controlled the money. See United States v. Schubert, 957 F.2d 694, 696 (9th Cir.1992) (district court's determination that defendant organized criminal activity not clearly erroneous when defendant provided associate with a substantial sum of cash with which to purchase marijuana); United States v. Lillard, 929 F.2d 500, 503 (9th Cir.1991) (held U.S.S.G. § 3B1.1 not limited to the offense of conviction). In the attempted trade of drugs for a machine gun, Huerta admitted arranging for Killinger to do it.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3