**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mark Allen VARELA, Defendant–Appellant.**

Nos. 91–50815, 92–50233.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1993.

Decided May 17, 1993.

As Amended June 9, and Aug. 10, 1993.

Jerry D. Whatley, Santa Barbara, CA, for defendant-appellant.

John Shepard Wiley, Jr., Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before SCHROEDER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are called upon to decide, among other things, whether a conviction that is expungeable under state law but that has never been formally expunged from the defendant's record can be a predicate offense under the federal felon in possession of a handgun statute, and whether that conviction may be considered in setting the criminal offense level under the Sentencing Guidelines.

I

During the seven months between October 1990 and April 1991, Varela entered into

several narcotics transactions with an undercover agent. Varela agreed to sell, and did sell, methamphetamines, cocaine, and marijuana to the agent. Varela also sold the agent semi-automatic firearms.

Varela advised the agent that he had several suppliers for the drugs. The agent met three of them: "Victor," Pulido, and Hernandez. Pulido and Hernandez were arrested along with Varela, and eventually pleaded guilty to the charges against them.

Varela was charged in two separate indictments with one count of conspiracy with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1); three counts of possession with intent to distribute cocaine, two counts of distributing cocaine, and three counts of distributing methamphetamine, all in violation of section 841(a)(1); and two counts of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The indictments were consolidated for trial. However, the district court severed the firearms charges for a separate trial so that the jury in the drug trial would not learn of Varela's prior felony. Varela was found guilty on all counts in both trials.

The district court sentenced Varela to 262 months imprisonment, the minimum within the Guidelines range, and imposed a $25,000 fine and 5 years of supervised release. Varela challenges his convictions, arguing (1) with regard to the drug convictions, that the district court's entrapment instruction was erroneous and (2) with regard to the firearm possession convictions, that the district court erred in not dismissing the firearm possession counts because the predicate conviction has been expunged. Varela also challenges his sentence, arguing (1) that the district court erred in enhancing his offense level on the basis of his role in the offense and (2) that the district court erred in considering an expunged conviction in calculating his criminal history level.

## II

We first consider Varela's challenges to his convictions.

### A

█ Varela argues that the supplemental instruction regarding entrapment was flawed because it did not clearly indicate that the government bears the burden of proving beyond a reasonable doubt that the defendant was not entrapped.

"The defense of entrapment has two elements: (1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime." *United States v. Barry,* 814 F.2d 1400, 1401 (9th Cir.1987). "When the defendant presents some evidence of both elements of the defense, the burden shifts to the prosecution to prove beyond a reasonable doubt either that there was no inducement or that the defendant was predisposed to commit the crime." *United States v. Hoyt,* 879 F.2d 505, 509, *amended,* 888 F.2d 1257 (9th Cir.1989).

In this case, the district court gave the following instructions regarding entrapment:

In order for the defendant to be found guilty of distributing methamphetamines ... *the government must prove each of the following elements beyond a reasonable doubt.*

First, the defendant intentionally delivered methamphetamines to the government agent.

Second, the defendant knew that it was methamphetamines or some other prohibited drug.

Third, that the defendant *was not entrapped by the government into committing the crime.*

. . . . .

A person is entrapped when the person has no previous intention to violate the law and is persuaded to commit a crime by government agents. On the other hand, where a person is already willing to commit a crime, it is not entrapment if government agents merely provide an opportunity to commit the crime.

During deliberations, the jury submitted a note to the court, asking for a clarification of the instruction regarding entrapment. The note asked: "Is the clause in line 2, 'no previous intention,' contradicted or overridden by the clause 'willing to commit' in line 4?" The district court responded with the following supplemental instruction:

With regard to instruction 32 on entrapment, the basic concept is that there is no entrapment where the defendant was quote predisposed unquote, or already willing to commit the offense. And the government provides the opportunity to commit the offense. Entrapment may exist only where the defendant had no such predisposition and the idea of committing the crime was placed in his mind by government persuasion. The instructions following No. 32 will also give you guidance on approaching the question of entrapment. All instructions are of course to be considered as a whole.

Varela argues that this supplemental instruction was an abuse of discretion because it failed to emphasize that the government bears the burden of proving that the defendant was not entrapped. The government contends that Varela did not object to the instruction on burden of proof grounds before the district court and thus that the proper standard of review is plain error. "To preserve the right to appellate review ... [of a jury instruction, the defendant] must have objected properly in the district court." *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989). "Federal Rule of Criminal Procedure 30 prohibits a party from assigning error 'unless that party objects thereto before the jury retires to consider the verdict, stating *distinctly* the matter to which that party objects and the grounds of the objection.'" *Id.* (quoting Fed.R.Crim.P. 30). A general objection to the instruction does not suffice to preserve the issue on appeal.

Varela did not properly object to the instruction on burden of proof grounds before the district court. The district court thoroughly discussed the proposed instruction with defense counsel, repeatedly asking counsel if he had any problems with it. Counsel made no specific objection to the proposed language; instead he answered that he believed that the court should *simply* answer the jury's question with a simple "yes" or "no." At no time did the defense counsel mention the burden of proof. Furthermore, the court reiterated several times that it would be willing to consider any alternate formulation that Varela would prefer; Varela proposed no alternative.

Where, as here, the defendant does not properly object to the instruction, stating specifically the grounds for the objection, the instruction is reviewed for plain error. *Kessi*, 868 F.2d at 1103. "Plain error is 'highly prejudicial error affecting substantial rights[,] and is found only in exceptional circumstances.'" *Id.* (quoting *United States v. Harris*, 738 F.2d 1068, 1972 (9th Cir. 1984)). "It must be highly probable that the error materially affected the verdict." *Kessi*, 868 F.2d at 1103.

We conclude that the instruction is not erroneous at all, let alone plain error. In reviewing a jury instruction, we must determine "whether the jury instructions *as a whole* are misleading or inadequate to guide the jury's deliberations." *United States v. Joetzki*, 952 F.2d 1090, 1095 (9th Cir.1991) (emphasis added). Here, the district court clearly instructed the jury in the original instruction that the burden of proving entrapment rests on the government. The district court's failure to emphasize the burden of proof in the supplemental instruction did not render the instructions, when viewed as a whole, inadequate.

Varela attempts to analogize to *Notaro v. United States*, 363 F.2d 169, 173, 175–76 (9th Cir.1966), in which this court concluded the district court's formulation of the entrapment instructions, when taken as a whole, could be read as assigning the burden of proof to the defendant instead of to the government. The *Notaro* instruction was as follows:

If, then, the jury should find *beyond a reasonable doubt* from the evidence in the case that before anything at all occurred respecting the alleged offense involved in this case, *the accused was ready and willing to commit crimes such as charged in the indictment,* whenever opportunity was offered and that the Government agents did no more than offer the opportunity, *the accused is not entitled to the defense of unlawful entrapment.*

On the other hand, *if the jury should find* from the evidence in the case that *the accused had no previous intent or purpose to commit any offense* of the character here charged, *and did so only because he was induced or persuaded* by some agent of the Government, *then the defense of*

*unlawful entrapment is a good defense and a jury should acquit the defendant.* *Id.* at 173 (emphasis added and deleted). The court held that the instruction was improper because it was "reasonably probable" that the jurors would have believed that the second paragraph placed the burden of proof on the defendant to prove the elements of the defense. A juror could interpret the second paragraph to mean that a defendant is *only* entitled to the entrapment defense if the jury makes the finding described in the paragraph, when in fact the defendant is also entitled to acquittal "if ... because of the entertainment of reasonable doubt, [the jury is] unable to 'find' that the necessary elements of the defense had not been excluded." *Id.* at 176. Although the district court had instructed the jury generally that the burden of proof rested on the prosecution, the court concluded that "[t]he possibility that there was confusion or misunderstanding is strengthened, not eliminated, by view of the instructions as a whole" because the general instruction and the specific instruction were contradictory. *Id.*

In this case, there is nothing in the supplemental instruction that contradicts the general instruction that the government bears the burden of proof on the entrapment issue. The supplemental instruction does not specifically instruct the jury *to make a finding* that the defendant was not predisposed before the defendant is entitled to the defense, as the instruction in *Notaro* did; instead, the instruction described the concepts behind the entrapment doctrine without reference to the burden of proof. We conclude that the instructions, viewed as a whole, properly rested the burden of proof on the government.

Varela also seems to be arguing that the supplemental instruction somehow misstates the substantive law of entrapment. It is not clear precisely what Varela's complaint is. He seems to suggest that the government must prove *both* elements of entrapment beyond a reasonable doubt. That is simply a misstatement of the law. *Hoyt,* 879 F.2d at 509.

In short, we conclude that the jury instructions did not amount to plain error.

### B

■ Varela was convicted of two counts of possessing a handgun in violation of 18 U.S.C. § 922(g)(1), which applies to persons previously convicted of felonies. Varela argues that the predicate felony underlying the conviction had been expunged, and thus cannot form the basis of a conviction under section 922(g)(1).

> Section 922(g) provides in relevant part:
> It shall be unlawful for any person—
> (1) who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year ...
> to ... possess in or affecting commerce, any firearm or ammunition....

Section 921(a)(20), in defining "crime punishable by imprisonment for a term exceeding one year," provides in relevant part:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned *or has had civil rights restored* shall not be considered a conviction for purposes of this chapter, *unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*

18 U.S.C. § 921(a)(20) (emphasis added).

Here, the predicate felony was committed when Varela was seventeen years old. After being convicted in state court of armed robbery, Varela was committed to the California Youth Authority ("CYA"). On January 9, 1989, after Varela had served his sentence, the Youthful Offender Parole Board issued Varela an Honorable Discharge from the CYA.

At the time Varela received his Honorable Discharge, section 1772(a) of the California Welfare and Institutions Code provided in relevant part:

> Every person honorably discharged from control by the Youthful Offender Parole Board who has not, during the period of control by the authority, been placed in a state prison, *shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed,* and every person discharged may petition the court which committed him or her, and the court may

upon such petition set aside the verdict of guilty and dismiss the accusation or information against the petitioner who shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed. . . .

(Emphasis added.) Varela argues that the statute served to expunge the conviction from his record and thus he falls into the exception in section 921(a)(20). The government counters that the state provides a procedure for formal expungement, of which Varela has not availed himself. Thus, according to the government, Varela should not get the benefits of expungement. Whether Varela's conviction has been constructively expunged is not important to this issue, however, because the exception in section 921(a)(20) applies to convictions for which civil rights have been restored by statute in addition to those that have been formally expunged. *See, e.g., United States v. Cardwell,* 967 F.2d 1349, 1350 (9th Cir.1992); *United States v. Erwin,* 902 F.2d 510, 511 (7th Cir.), *cert. denied,* 498 U.S. 859, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990); *United States v. Cassidy,* 899 F.2d 543 (6th Cir. 1990). Section 1772 operates to restore the discharged offender's civil rights, releasing the offender from all penalties and disabilities resulting from the offense automatically, as a matter of law. *See, e.g., People v. Navarro,* 7 Cal.3d 248, 102 Cal.Rptr. 137, 158, 497 P.2d 481, 502 (1972).[1]

Accordingly, Varela's armed robbery conviction cannot be considered a "conviction" for purposes of section 922(g)(1) "unless . . . [the] restoration of civil rights expressly provides that the person may not . . . possess . . . firearms." 18 U.S.C. § 921(a)(20). In *Cardwell,* 967 F.2d at 1351, we held that "in determining whether a restitution of civil rights expressly prohibits firearm possession, the district court must look *to the whole of state law* at the *time of restoration.*" "In

other words, if a felon falls into one of the categories specified by section 921(a)(20), his felony conviction may not serve as a predicate conviction for a violation of section 922(g)(1), unless he has been informed by state statute or other state action of any prohibition concerning firearms" at the time of expungement. *Id.* at 1350. The proper inquiry is "whether the particular civil right to carry guns has been restored by [state] law." *Erwin,* 902 F.2d at 513.

We must thus determine whether California law "expressly" prohibited Varela from possessing a firearm at the time Varela was discharged.[2] Section 12021 of the California Penal Code prohibits any person who has been convicted of a felony from owning or possessing a concealable firearm. That section was in effect at the time Varela was honorably discharged from the CYA. However, at that time, no California court had ruled in a published opinion on whether the prohibition of section 12021 was a "penalty" or "disability" that is released by California Welfare and Institutions Code section 1772.[3] Eight months later, however, the California Supreme Court in *People v. Bell,* 49 Cal.3d 502, 262 Cal.Rptr. 1, 778 P.2d 129 (1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2576, 109 L.Ed.2d 757 (1990), addressed the precise question of whether section 12021's prohibition against carrying a firearm was released by section 1772. The court held the fact that the defendant had been honorably discharged from the CYA *did not* preclude his conviction under section 12021 for possession of a firearm. The conviction at issue in *Bell* involved the possession of a firearm in 1978; Varela was discharged in 1989.

Thus, the California Supreme Court in *Bell* determined that a person in Varela's position could be criminally convicted for possessing a firearm at the time Varela was discharged. Because Varela could have been convicted

1. Whether the conviction is "expunged" is a key question in the analysis of another issue raised by the appellant, however. *See* Part II.B, *supra.*

2. We emphasize that the proper inquiry is the state of the law at the time that Varela was honorably discharged from the CYA, *not* at the time he actually committed the conduct, including the possession of the weapon, that is the subject of this conviction. It is clear that at the time Varela committed the conduct that is the

subject of this appeal—from October 1990 to April 1991—it was illegal for a person in Varela's position to possess a firearm under California law. *See People v. Bell,* 49 Cal.3d 502, 262 Cal.Rptr. 1, 778 P.2d 129 (1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2576, 109 L.Ed.2d 757 (1990).

3. The California Attorney General, however, had issued an advisory opinion that held that persons who had been honorably discharged from the CYA were not "felons" for purposes of § 12021.

under California law, we conclude that he was expressly prohibited from possessing a firearm under section 921(a)(20). We defer to the California Supreme Court's interpretation of its own law because "[t]he intent of Congress [in creating the exception to section 922(g)(1) in section 921(a)(20) ] was to give effect to state reforms with respect to the status of an ex-convict." *United States v. Cassidy,* 899 F.2d 543 (6th Cir.1990). Since California law expressly prohibited Varela from possessing a firearm at the time he was discharged, we affirm Varela's conviction under section 922(g)(1).

### III

We next consider Varela's challenges to his sentence.

### A

■ Varela argues that the district court erred in increasing his offense level for being an "organizer, leader, manager, or supervisor" under United States Sentencing Guidelines § 3B1.1(c).

The district court made the following findings regarding Varela's organizational role in the offense:

> Probation officer found that—what the probation officer reported, what I think the testimony indicated, and that is that these offenses were organized by Mr. Varela. He had the contact with the buyer—at least he thought he had a buyer, that is the undercover officer. He had multiple contacts with suppliers, the amphetamine supplier, the first cocaine deal supplier where the man pulled out....

> The second cocaine supplier, the co-defendants in this case, who eventually did supply the cocaine, with the man who had the guns, who may be the same person involved in the methamphetamine item so far as I can tell from the facts here. And in other words, Mr. Varela is out there with all these multiple contacts supplying illicit drugs.

> He puts together transactions with various of these suppliers with the undercover

agent. In effect, he's acting as the wholesaler or at least the middleman between the supplier and the presumed wholesaler, the undercover agent.

> Now to my mind, that adds up to a leadership role. He's doing all this organizing and putting together these deals.

The court also adopted by reference the findings in the presentence report regarding Varela's role in the offense. Those findings are as follows:

> Varela is viewed as the organizer or leader in this criminal activity in that he negotiated and transacted all of the drug deals. He transported, delivered and exchanged the drugs with the UA. He located suppliers not only for drugs but also for weapons. Pulido and Hernandez appear to have been Varela's suppliers; neither are viewed as having leadership roles. In considering the foregoing, Pulido and Hernandez are viewed as equal in culpability. As such, they are viewed as having lesser culpability than Varela but are viewed as equal in culpability with each other.

Varela does not challenge the finding that he coordinated the deals involving the various suppliers and the undercover agents. Rather, he essentially argues that these facts, even if true, are insufficient to support the ultimate finding that he was an "organizer, leader, manager or supervisor." In *United States v. Avila,* 905 F.2d 295, 299 (9th Cir.1990), however, the court upheld the enhancement for the organizational role of the defendant where the defendant coordinated the procurement and the distribution of drugs from numerous suppliers. Varela's role was similar to that of the defendant's in *Avila;* we conclude by analogy to *Avila* that the district court's finding that Varela was an organizer was not clearly erroneous.

The fact that Varela and his suppliers were not in a permanent hierarchical relationship does not preclude our conclusion. Section 3B1.1 allows enhancements for "organizers" as well as for "supervisors," "leaders," or "managers." An enhancement may be proper where, as here, a defendant organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants. The enhancement reflects the greater level of cul-

pability of the participant who arranges the transaction.

Neither our holding in *United States v. Mares–Molina*, 913 F.2d 770, 773–74 (9th Cir.1990), nor *United States v. Hoac*, 990 F.2d 1099, 1110–11 (9th Cir.1993), compels a different conclusion. In *Mares–Molina*, the appellant allowed his trucking company to be used as a drop house for cocaine that had been smuggled into the country in the tires of large trucks. The district court upwardly adjusted his offense level under U.S.S.G. § 3B1.1 because he "managed" the trucking company. We reversed, holding that in order for an enhancement under § 3B1.1 to be proper,

> the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime.

*Mares–Molina*, 913 F.2d at 773 (quoting *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir.1990)). We went on to conclude that "[t]here [were] no facts to support the conclusion that Mares exercised control or was otherwise responsible for organizing, supervising, or managing others in the commission of the offense." *Id.* In short, we rejected the notion that for purposes of § 3B1.1, it was sufficient to " 'manage' a *thing*, such as a business or money or a warehouse, [instead of] a person." *Id.* at 774 (Rymer, J., dissenting).

We followed *Mares–Molina* in *Hoac*, in which the defendant was active in the commission of the offense, but to the extent he managed anything, he managed a business, not people. *Hoac*, 990 F.2d at 1110.

Here, in contrast to *Mares–Molina* and *Hoac*, by coordinating the activities of the other participants to the extent necessary to complete the transaction, Varela organized *people*, not merely *things*. *See Mares–Molina*, 913 F.2d at 773 (contrasting Mares–Molina's position to that of the defendant to that in *Avila*, noting parenthetically that in *Avila* there was "evidence that the defendant coordinated the procurement and distribution of the drugs"). The district court did not err in

its two-level upward adjustment under § 3B1.1(c).

### B

■] Varela argues that the district court incorrectly considered convictions that have been expunged by operation of state statute in calculating his criminal offense level.

As discussed in Part I.A, *supra*, Varela was convicted in state court of armed robbery when he was seventeen years old, was committed to the CYA, and after serving his sentence, was honorably discharged. At that time, under section 1772(a) of the California Welfare and Institutions Code, a person receiving an honorable discharge could petition the court to have the guilty verdict set aside.[4]

Because Varela never petitioned the court to have the conviction set aside, the district court concluded that the conviction had not been "expunged" and included the conviction in calculating Varela's criminal history category.

United States Sentencing Guideline § 4A1.2(j) provides that in calculating the criminal history category of a defendant:

> Sentences for expunged convictions are not counted, but may be considered under § 4A1.3 (Adequacy of Criminal History Category).

Application note 10 to U.S.S.G. § 4A1.2 provides:

> *Convictions Set Aside or Defendant Pardoned.* A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction. *Sentences resulting from such convictions are to be counted.* However, expunged convictions are not counted. § 4A1.2(j).

(Emphasis added.) Notwithstanding application note 10, this court in *United States v. Hidalgo*, 932 F.2d 805 (9th Cir.1991), held

---

4. The relevant statutory language is as follows:
   [E]very person discharged may petition the court which committed him or her, and the court may upon such petition set aside the verdict of guilty and dismiss the accusation or

   information against the petitioner who shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed. . . .
   Cal. Welfare & Institutions Code § 1772(a).

that convictions set aside pursuant to section 1772 of the California Welfare and Institutions Code are "expunged" for purposes of United States Sentencing Guidelines § 4A1.2(j).

Varela argues that his conviction should be considered expunged even though he has not gone through the formal petitioning process described in the statute. He argues that the statute operates automatically to set aside the conviction, and that the petitioning process serves only to provide documentary evidence of what the statute has effected automatically. Varela relies on *People v. Navarro*, 7 Cal.3d 248, 102 Cal.Rptr. 137, 158, 497 P.2d 481, 502 (1972), in which the California Supreme Court held that an offender receiving a certificate of honorable discharge from the California Youth Authority was entitled as a matter of right to have his conviction set aside. The court described the petitioning process as nothing more than a mere formality intended to provide to the discharged offender evidence that his conviction had been set aside:

> If a *pro forma* release is required as documentary evidence [the offender] is entitled to this as a matter of right and may apply for a *nunc pro tunc* order of dismissal [under 1772] which the committing court has no authority to refuse.

*Navarro*, 102 Cal.Rptr. at 158, 497 P.2d at 502. The government, on the other hand, argues that the petitioning process is a formal requirement that cannot be waived, and that the conviction is not "expunged" for purposes of the Guidelines unless the procedure is followed.

We have never addressed the precise question of whether a conviction will be considered "expunged" for purposes of the Guidelines where the defendant is entitled to expungement but does not follow the formal procedures specified by statute.[5] *Cf. United States v. Kammerdiener*, 945 F.2d 300, 301 (9th Cir.1991) (where a statute provided that a conviction would be *"automatically set aside," see* 18 U.S.C. § 5021 (emphasis added), upon the occurrence of an event, once the event occurred the conviction could not be considered in calculating the criminal his-

tory category). Other circuits have taken a formal approach: where a statute describes an expungement procedure, the expungeable conviction can be included in the criminal history category unless the defendant complies with the procedure. For example, in *United States v. Bucaro*, 898 F.2d 368, 372 n. 6 (3d Cir.1990), the court upheld the inclusion of the conviction, noting:

> Under Pennsylvania law, [the appellant] could have moved to expunge his prior adjudications of juvenile delinquency before these federal indictments were entered.... This normally would have prevented the prior adjudication from being considered during sentencing.... However, [the appellant] did not move for expungement, and the juvenile adjudications remained on the record at the time of sentencing.

Similarly, in *United States v. Cox*, 934 F.2d 1114, 1124 (10th Cir.1991), the Tenth Circuit in interpreting a different California law providing a right of expungement held:

> Although the conviction may have been expungeable before sentencing in the instant case, expungement does not occur automatically under [Cal.Penal Code § 1203.4] .... [T]he conviction was not expunged until after he was sentenced in the case at hand. We therefore conclude that at the time of sentencing [the conviction] was a "prior conviction."

*See also United States v. Ruiz*, 734 F.Supp. 312, 313–14 (N.D.Ill.1990) (rejecting the appellant's argument that an expungeable conviction should be treated the same as an expunged conviction where the defendant's record was never formally expunged); *cf. United States v. Beaulieau*, 959 F.2d 375 (2d Cir.1992) (conviction was considered expunged even though because of a clerical error it was not sealed because the defendant had gone through all of the proper expungement procedures).

On the other hand, where the expungement statute specified no procedures and provided that expungement "shall" be granted, the Tenth Circuit held that conviction could not be considered, even though the record was not formally expunged. *United*

---

**5.** It appears that Hidalgo complied with the formal procedures because the court without discussion states that his conviction has been set aside.

*States v. Johnson,* 941 F.2d 1102 (10th Cir. 1991). The statute in *Johnson* provided:

> Upon completion of the probation term ... the defendant *shall be discharged* without a court judgment of guilt, and the verdict or plea of guilty or plea of nolo contendere *shall be expunged from the record* and said charge *shall be dismissed* with prejudice to any further action.

*Id.* at 1110–11 (quoting Okla.Stat.Ann. tit. 22, § 991c (West 1986)) (emphasis added by *Johnson* court). The court stated that "the key question ... is whether the Oklahoma ... law automatically expunges a criminal record upon successful completion of probation, or whether an individual must take same affirmative action after probation to have the record expunged." *Id.* at 1111. The court concluded that the statute operated automatically because (1) the use of the term "shall" implies a command or mandate; and (2) no procedures were specified in the statute. *Id.* at 1111–12.

On balance, we conclude that the conviction is *not* expunged for purposes of sentencing. In no case has a federal court held that a defendant can get the benefit of an expungement statute when he or she has not complied with procedures spelled out in the statute. It would be inconsistent with application note 10 to United States Sentencing Guidelines § 4A1.2 to consider the restoration of civil rights that occurs automatically upon honorable discharge to be the equivalent to a formal expungement. *See generally United States v. Anderson,* 942 F.2d 606, 612 (9th Cir.1991) (en banc) (Guidelines commentary is entitled to considerable weight, more so than ordinary legislative history); *cf. Hidalgo,* 932 F.2d at 805 (where the conviction has actually been set aside, the conviction will be considered expunged).

AFFIRMED.