UNITED STATES of America, Plaintiff–Appellee,

v.

Harry Armondo DORRI, Defendant–Appellant.

No. 92–50339.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1993.

Decided Feb. 3, 1994.

---

Guy C. Iversen, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant Harry Armondo Dorri.

Saul D. Brenner, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee United States of America.

Before: KOZINSKI, SILER,* and KLEINFELD, Circuit Judges.

SILER, Circuit Judge:

Defendant Harry Armondo Dorri appeals his conviction for soliciting a bribe pursuant to 18 U.S.C. § 201(b)(2)(A). The only issue on appeal is whether the district court erred by failing to respond more explicitly to an inquiry by a deliberating jury concerning the definition of the word "corruptly." Finding no error, we **affirm** the ruling of the district court.

## THE FACTS

Dorri was an employee of the Immigration and Naturalization Service (INS). Seta Sarrafian is an alien who was applying to the INS for a permanent residency card, or "green card." Defendant told Sarrafian several times by telephone that if she paid him $1,000 he could guarantee the processing of her green card application. In addition, defendant attempted to use Sarrafian to solicit

---

* The Honorable Eugene E. Siler, Jr., United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

bribes on his behalf from other resident aliens who were applying for green cards. However, unknown to him, some of the calls were recorded by the Federal Bureau of Investigation (FBI), and he was eventually indicted and tried for violating 18 U.S.C. § 201(b)(2)(A), by "corruptly ... seek[ing] ... anything of value ... in return for ... being influenced in the performance of any official act."

Later, in an interview with the FBI, defendant denied soliciting anything of value for himself while he worked for the INS. He also denied soliciting money from Sarrafian for the processing of her application. However, once he was confronted with the taped conversations, he admitted that he had been conducting his own personal investigation of Sarrafian to prove that she had submitted a fraudulent application and would bribe him. At trial, he testified at length about conducting this secret, unauthorized investigation of Sarrafian. He stated that he had no intent to keep the money that he requested from Sarrafian.

The court's instructions to the jury included the following three essential elements of the crime charged:

> One: The defendant demanded, sought, or received something of value as described in the indictment;

> Two: The defendant was, at that time, a public official of the United States or was acting on behalf of the United States; and

> Three: The defendant demanded, sought or received the item of value corruptly in return for being influenced in the performance of an official act.

This was derived from 2 Edward J. Devitt & Charles B. Blackmar, *Federal Jury Practice and Instructions* § 25.06 (4th ed. 1990).

The court further instructed the jury from Ninth Circuit Model Jury Instruction No. 3.14:

> An act is "corruptly" done if it is done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method with a hope or expectation of either financial gain or other benefit to one's self or to another.

The jury was also instructed that it was "not a defense to the crime of bribery ... that the demand of something of value was made by the public official to influence an official act which is actually lawful, desirable or even beneficial to the public [or] that the public official did not have the authority, power, or ability to perform the act for which the thing of value was demanded or sought." This came from 2 Devitt & Blackmar, *Federal Jury Practice & Instructions* §§ 25.11, 25.12 (4th ed. 1990).

Defense counsel did not tender a proposed jury instruction concerning the word "corruptly," nor did he object to the instructions given pursuant to Fed.R.Crim.P. 30.

During deliberations, the jury sent a note to the court, asking for a clarification on the word "corruptly." The court then consulted with counsel. The only suggestion to the court by defense counsel was that the jury was just looking for clarity in the instruction on the word "corruptly." He suggested the court use language from *United States v. Strand*, 574 F.2d 993, 996 (9th Cir.1978), that "[a]n act is 'corruptly' done if done voluntarily and intentionally, and with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means." Thereafter, the court responded to the jury by saying:

> The instruction is the law, and remember what I said, to the extent that you perceive there to be a gap between the law and the facts as you see them, that's what all those common sense instructions were about.

> If it makes sense and you think it's possible to deal with that perceived gap just by filling it, collectively, then I think that's the best thing. This is the right instruction, it's hard to clarify it.

Essentially, then, the court advised the jury to follow the instructions previously given.

## THE LAW

The defendant contends that the court erred by failing to clarify the word "corruptly" when the jury specifically asked about it. If the defendant wanted an instruction supporting his theory of the case, that is, that he was operating his own sting, he should have

proposed an instruction rejecting the theory that ambition for advancement would suffice as a corrupt motive. However, he made no tender of an instruction before the jury retired to deliberate.

■ Had the jury not made an inquiry, any flaw in the instruction would be reviewed by this court only for plain error. *See United States v. Varela,* 993 F.2d 686, 688 (9th Cir.), *cert. denied,* ── U.S. ──, 114 S.Ct. 232, 126 L.Ed.2d 186 (1993). Nevertheless, when a jury requests a clarification on the instructions, the parties have an opportunity to object, and an objection made at that time would preserve any error on appeal. *See United States v. Lane,* 708 F.2d 1394, 1397 (9th Cir.1983). However, the requirement under Fed.R.Crim.P. 30 still applies. That is, counsel must state "distinctly the matter to which that party objects and the grounds of the objection." Otherwise, if the party just objects, the court would be at a loss to know the reasons for it. The trial court, not the appellate court, should have the first opportunity to correct the mistake.

■ In the case at bar, defense counsel made his objection, but he did not articulate it sufficiently for the court to give a valid clarification to the jury. The only significant difference between the original instructions and the language that defense counsel proposed from *United States v. Strand* is the addition of the words "bad purpose," which defense counsel could not define. As the trial judge correctly pointed out, telling the jury "corruptly" meant "bad purpose" would have given them no additional help. Therefore, the defendant did not comply with Rule 30 by stating distinctly the matter to which he was objecting and giving the grounds of his objection. The factual situation here is similar to that in *Varela,* 993 F.2d at 688, where defense counsel proposed no "alter-

nate formulation" to the instructions that the defendant preferred. As in *Varela,* the court here gave appropriate original instructions. However, in *Varela,* the court gave a supplemental instruction; here, it declined to do so. Nevertheless, in both cases, counsel did not comply with Rule 30.

■ Therefore, the ruling of the district court should be reviewed on a "plain error" basis. Under the circumstances, it was not plain error for the court to give no clarifying instructions. *See United States v. Kessi,* 868 F.2d 1097, 1102 (9th Cir.1989) (general objection insufficient). Plain error is error that is clear under current law and must affect substantial rights of the defendant. The burden is on the defendant to establish that the error was prejudicial. If these elements are established, the court of appeals should correct a plain error affecting substantial rights if it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Olano,* ── U.S. ──, ──, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). Thus, plain error is "found only in exceptional circumstances." *United States v. Harris,* 738 F.2d 1068, 1072 (9th Cir.1984). This case does not present those exceptional circumstances.

Here, no one seemed to be overly concerned about the specificity of the word "corruptly," until the trial was over.[1] This concern ripened into a motion for a new trial after defense counsel had spoken with a juror who told him that the word was a primary concern for them. At trial, the prosecutor did not argue that Dorri would be guilty even if he acted only for professional advancement, so the judge was not on notice that it would be a troublesome issue.[2] Thus, it was incumbent upon defense counsel to

1. The dissent at p. 1202 n. 3 doesn't understand this sentence. The explanation that there was little concern about the word "corruptly" until the trial was over is simple but may be just a semantic difference: I consider the trial to be completed when a jury begins its deliberation. If one thinks the trial was not over until the jury verdict, then obviously there was some concern about the word "corruptly" prior to the termination of the case, but it was not raised by a

proposed jury instruction or by objection to the court's original instructions.

2. Similarly, the dissent at p. 893 n. 3 has some trouble with this sentence. The trial judge had no notice of the magnitude of this issue (defining "corruptly") because defense counsel did not submit proposed instructions or object before the jury was originally charged.

articulate the problem with particularity, so that the court could make an appropriate ruling. The "bad purpose" language defense counsel had suggested would not have assisted the jury in rejecting the erroneous notion that desire for professional advancement was "corrupt."

We have no quarrel with the dissent's very eloquent explanation of the law of bribery. If defense counsel had demonstrated just a little of this eloquence in timely fashion, the jury might have been instructed differently and we would not have had this issue to decide. But this did not happen, as counsel did not comply with Rule 30.

■ Additionally, although *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946), held that the court should clear up the difficulties which a jury may have, nevertheless, the giving of supplemental instructions lies within the discretion of the trial court. *United States v. Solomon*, 825 F.2d 1292, 1295 (9th Cir.1987), *cert. denied*, 484 U.S. 1046, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988). There was no abuse of discretion here.

Therefore, for either the reason that the trial court did not commit plain error by refusing to clarify the instruction after the inquiry by the jury, or because the failure of the court to give supplemental instructions was not an abuse of discretion, we find no reversible error under the circumstances of this case.

**AFFIRMED.**

KOZINSKI, Circuit Judge, dissenting.

The heart of Dorri's defense was that he wasn't acting corruptly. He was, rather, conducting a one-man sting: He would lure Sarafian into paying a bribe in order to trap her employer. Far-fetched? No doubt. Goofy? To be sure. But—if believed by the jury—surely not illegal.

The trouble was, the jury said it had difficulty with the term "corruptly," an element of 18 U.S.C. § 201(b)(2)(A), and the key to Dorri's defense. After learning that the jury was confused, Dorri's counsel objected to the original instruction and asked the judge to clarify this term. The majority, nevertheless, says that defendant failed to comply with Fed.R.Crim.P. 30, which requires only that an objecting party "stat[e] distinctly the matter to which that party objects and the grounds of the objection." According to the majority, defense counsel was required to do more than point out the problem—he was required to come up with a solution, i.e., propose specific language the district judge could use to further instruct the jury.

While it's certainly good practice for a lawyer to suggest such language, I had always thought the responsibility for getting the law right lay with the district judge. The lawyer's responsibility, as I understood it, was to focus the judicial mind on the issue. Once he does this, the burden shifts to the judge to do whatever research and reflection is necessary to draft a legally sufficient instruction. If Fed.R.Crim.P. 30 was designed to make lawyers come up with correct instructions—rather than merely object to those the court proposed—it surely could have said so more clearly. I suspect that today's ruling will be mighty surprising to many defense lawyers—as well as judges and prosecutors.

A. The majority reviews for plain error[1] because "defendant did not comply with Rule 30 by stating distinctly the matter to which he was objecting and giving the grounds of his objection." Maj. op. at 891. Yet Dorri's counsel told the court, "I think what [the jury's] asking for is clarity on my client's motivation. I mean, what is corrupt...." RT 2/11/92 at 10. He tried to convince the judge to clarify the meaning of "corruptly", suggesting language approved by this court in *United States v. Strand*, 574 F.2d 993 (9th

---

1. In its closing paragraphs, the majority seems to suggest it is also reviewing for abuse of discretion. *See* Maj. op. at 892. I do not read the majority there as saying it would affirm the conviction even if the district court had rejected a perfect alternative instruction proffered by Dor-ri's counsel. Rather, I understand my colleagues to be saying that the district judge didn't abuse his discretion because the defense lawyer didn't come up with a good alternative. This is really no different than the majority's principal ruling.

Cir.1978). Where then is the Rule 30 problem?

According to the majority, it's counsel's failure to "articulate [his objection] sufficiently for the court to give a valid clarification to the jury." Maj. op. at 891. And counsel failed to articulate the objection sufficiently because he did not propose a better "alternate formulation." *Id.* But Rule 30 doesn't affect the burden of properly instructing the jury—that still lies with the district judge. The point of Rule 30 is to make sure the court understands when and why counsel doesn't agree with an instruction—"to prevent unnecessary new trials caused by errors in instructions that the district court easily could have corrected if they had been brought to its attention at the proper time." *United States v. Payne,* 944 F.2d 1458, 1463–64 n. 2 (9th Cir.1991). That doesn't mean counsel has to tell the court how it can be done better. Rule 30 says nothing about alternative instructions; not a word. Indeed, our cases make clear that Rule 30 is not even satisfied by offering an alternative instruction, no matter how good. *See, e.g., United States v. Williams,* 990 F.2d 507, 511 (9th Cir.1993) ("Because defense counsel did not distinctly state the grounds of his objection and *merely offered an alternative instruction,* plain error review is appropriate.") (emphasis added).[2]

Thus, whether Dorri's counsel made a helpful suggestion by pointing to the "bad purpose" language of *Strand* is beside the point. What matters is that he told the judge he thought the jury was "asking for . . . clarity on [Dorri's] motivation," on "what is corrupt." RT 2/11/92 at 10. Given Dorri's defense—that his motives were pure—counsel's objection sufficiently alerted the district judge to the problem. It was then the judge's responsibility—and ultimately ours—to come up with an instruction that solves it.[3]

The notion that lawyers must come up with a perfect substitute instruction not only finds no support in the language of Rule 30, it's also suspect on due process grounds. Raising an objection—that is, pointing out a problem—is something a lawyer can reasonably be expected to do in the heat of an ongoing trial. Drafting a perfect instruction is a much more difficult matter; it may well require time and research. A generic instruction might exist somewhere in the case law or in form books. Or, as in this case, a generic instruction simply may not suffice. *See* pp. 894–95 *infra.* If we are going to read Rule 30 as requiring lawyers to come up with perfect instructions, we ought to build in some procedural protections to assure sufficient time for this task.

The majority's reliance on *United States v. Varela,* 993 F.2d 686 (9th Cir.1993), is misplaced. In *Varela,* the defendant "made no specific objection to the proposed language. . . . [and] [a]t no time . . . mention[ed] the burden of proof," *id.* at 688, the very issue he was trying to raise on appeal. Here, defendant plainly did object, and vigorously. *Varela* does mention that the district court "reiterated several times that it would be willing to consider any alternate formulation that [the defense] would prefer; [counsel] proposed no alternative." *Id.* But this was just another way of pointing out that defense counsel didn't object. *See* n. 2 *supra. Varela* surely does not impose an additional requirement that defense counsel come

---

2. Whether an alternative instruction is offered becomes an issue when a party does *not* object, and argues—under the one recognized exception to Rule 30—that objecting would have been a "pointless formality." It is then one factor we consider in determining whether the failure to object didn't matter—because the trial judge was fully aware that the party did not agree with the court's instruction. *United States v. Kessi,* 868 F.2d 1097, 1102 (9th Cir.1989). Clearly the majority did not find such a problem here. Maj. op. at 891 ("In the case at bar, defense counsel made his objection. . . .").

3. I am at a loss as to how the majority can assert—after the jury submitted a note requesting

clarification specifically on this point, and Dorri's counsel repeatedly asked the judge to clarify the term—that "no one seemed to be overly concerned about the specificity of the word 'corruptly,' until the trial was over." Maj. op. at 891. Similarly, I don't see how the "judge was not on notice that it would be a troublesome issue," *id.,* when—as the majority recognizes—a large part of Dorri's case was devoted to proving that his behavior was not in any way corrupt, *id.* at 890 ("he testified at length about conducting this secret, unauthorized investigation. . . . that he had no intent to keep the money. . . .").

up with perfect alternative instructions in addition to making an objection. Here Dorri's counsel specifically asked the court to clarify the meaning of "corruptly" because he thought the jury was confused on this element, and referred to *Strand* to suggest a way of doing so. The objection here was more than "sufficient to alert the court to error." *United States v. Kramas,* 672 F.2d 766, 769 (9th Cir.1982).[4] Rule 30 was satisfied.

B. The question, then, is, did the district court correctly instruct the jury on the elements of 18 U.S.C. § 201? *United States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992).

Whether Dorri's conduct, if his story be believed, amounts to bribery under section 201 is not obvious. Section 201 doesn't absolutely prohibit public officials from "seek[ing] ... anything of value personally or for any other person or entity, in return for ... being influenced in the performance of any official act." It only bars them from doing so *corruptly,* and "corruptly" is nowhere defined in the statute.

In fact, "corruptly," like "due process," "malice aforethought" or "proximate cause," is a concept that can't be easily captured in a single formula, as it varies too much from situation to situation. There's certainly a core meaning to it: Conduct is corrupt if it's an improper way for a public official to benefit from his job. But what's improper turns on many different factors, such as tradition, context and current attitudes about legitimate rewards for particular officeholders.

A judge, for instance, wouldn't be acting corruptly if he conditioned a shorter prison sentence on payment of restitution to the victim; but he would if he conditioned the lower sentence on defendant's cutting the judge's lawn. Legislative logrolling—Senator A tells Senator B "I'll vote for your bill if you vote for a bailout of Corporation C"—isn't corrupt, unless A owns a chunk of C. Managers regularly offer their employees incentives to influence their behavior; we promote public servants who perform above the call of duty (sometimes even if they bend a few internal rules in the process), decorate war heroes, reward whistleblowers. Such inducements aren't usually considered corrupt, though sometimes they might be.

Attempts to cabin the definition of "corruptly" within a single rule have proven unsatisfactory. *United States v. Popkin,* 943 F.2d 1535, 1540 (11th Cir.1991), for instance, defines "corruptly" (in the obstruction of justice context) as "done with the intent to secure an unlawful benefit either for oneself or for another," but what benefits are unlawful? Black's Law Dictionary says "corruptly" refers to "a wrongful design to acquire some pecuniary or other advantage," Black's Law Dictionary 345 (6th ed. 1990), but this too begs the question: Exactly when is a design to acquire some advantage "wrongful"? Ballentine's Law Dictionary defines "corruptly" as involving an "intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others," Ballentine's Law Dictionary 276 (3d ed. 1969): Again, though, whether the intended advantage is improper and whether the conduct is inconsistent with official duty are the very questions we should be answering.[5]

C. "Corruptly," then, can only be defined case by case.[6] In this case, Dorri's conduct as he describes it—soliciting a bribe only to catch a crook, intending to turn the money and the evidence over to his superiors, and

---

**4.** Although *Kramas* dealt with Rule 30's civil analogue, Fed.R.Civ.P. 51, the standard for a proper objection is the same under both. *Kessi,* 868 F.2d at 1102.

**5.** Nor can "corruptness" be a question of fact for the jury to decide. A jury isn't free to conclude logrolling is bad and the senators in the example above are acting "corruptly." What's legal and what's not is for courts to decide.

**6.** *Cf.* John T. Noonan, Jr., *Bribes* 644 (1984) (pointing out that courts "decide case by case,

without statutory guidance, what acts should be characterized as done 'corruptly,'" but arguing that the "corruptly" requirement should be dropped from the statute).

Of course, if in a particular case a court finds itself defining "corruptly" in a way that can't fairly be applied retroactively, the Due Process Clause might bar the court from applying the statute to the defendant before it. *See United States v. Poindexter,* 951 F.2d 369, 378–79 (D.C.Cir.1991).

hoping only for a commendation or promotion—would be an attempt to get something of value (a promotion), but it wouldn't be corrupt.

Say Dorri had arranged things so he couldn't possibly keep the bribe—for example, suppose he sent his boss a note explaining the whole plan just before he asked Sarafian for the money. Surely his conduct couldn't then be described as corrupt. The only gap between this hypothetical and Dorri's story is the problem of proof. If Dorri could convince the jury his intentions were pure—admittedly much harder in his case than in the hypothetical—he would have to be acquitted.

Thus, if the jury found Dorri was telling the truth about his plans, it should have found him not guilty. Unfortunately, nothing in the instruction given by the court—

> An act is "corruptly" done if it is done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method with a hope or expectation of either financial gain or other benefit to one's self or to another.

AER 20—told the jury to do this. A reasonable juror could well have convicted Dorri under this instruction even if he believed Dorri's testimony.

Dorri conceded his acts were "done voluntarily and intentionally," and "with a hope or expectation of . . . other benefit to one's self," namely recognition by his superiors and a possible promotion. It would have been perfectly reasonable for the jurors to consider a promotion to be a "benefit." In fact, both the district court, ruling on the motion for a new trial, ER 63, and the government counsel, arguing before us, said as much. Clearly there was a "reasonable likelihood that the jury . . . applied the instruction," *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1197, 108 L.Ed.2d 316 (1990), the way the judge and prosecutor thought it should be applied.

And a juror who believed Dorri's story might also have reasonably concluded Dorri was trying "to bring about either an unlawful result or a lawful result by some unlawful method." Whether Dorri was using an "un-lawful method" depended entirely on the ultimate question to be decided by the jury, namely whether his motive was corrupt. In other words, the definition of corruption given to the jury was hopelessly circular: If Dorri's conduct was illegal, then he was using an unlawful method, which means he was acting corruptly, which means his conduct was illegal. If Dorri's conduct was permissible, then he wasn't using an unlawful method, which means he wasn't acting corruptly, which means his conduct was lawful.

Faced with language like this, it should be no surprise that the jurors were confused, and without a clarification it's hard to guess what they did. Maybe they read into the instruction the notion that "corruptly" in this case required an intent to keep the money. But maybe they didn't. There was certainly nothing about the instruction the jury was given that told them Dorri acted corruptly if he meant to keep the money but not corruptly if he was only angling for a promotion.

Because there's no generic definition of "corruptly," the district court should have tailored its instruction to the facts and circumstances of this case, and clearly explained to the jury what, under these circumstances, would be a corrupt motive and what would be a proper one. *See Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946) ("When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."). In this case, the district court should have instructed the jury that Dorri would have been acting "corruptly" only if he solicited the money with the intent to keep it rather than turn it over to the authorities. Because the instruction actually given doesn't make this distinction clear, I would reverse.