29 F.3d 635
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hung Van HUYNH, Defendant-Appellant.
 No. 93-10510.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1994.
Decided June 28, 1994.
 
 Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Hung Van Huynh was convicted of conspiring and attempting to bring 138 unauthorized aliens to the United States in violation of 8 U.S.C. Sec. 1324(a)(2)(B)(ii) and 18 U.S.C. Secs. 2 and 371. Huynh appeals the district court's denial of his motion to dismiss the indictment or suppress evidence based on an alleged violation of the Posse Comitatus Act (18 U.S.C. Sec. 1385 and 10 U.S.C. Sec. 375), the upward adjustment in his sentence based on his role as a manager, and the upward departure based on the large number of aliens involved and the financial impact on the United States. This court has jurisdiction, 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Huynh argues that the Posse Comitatus Act was violated when Army officer Ewald acted as translator for the officers of the Boutwell because Ewald's actions constituted "direct participation ... in ... search, seizure[, or] arrest" and in an interdiction. 10 U.S.C. Sec. 375; DOD Directive 5525.5 (January 15, 1986).[1]
 
 
 4
 We disagree, as Ewald's participation was purely passive. He was unarmed, he told the Chinese only what the Coast Guard officers told him to say, he made no decisions as to how the boarding party acted, he gave no directions about the search, and he had nothing to do with the arrests. In short, he did nothing different from what a civilian translator would have done. The district court's findings that Ewald's sole duties as translator were passive and did not subject the defendants to action by the armed forces were therefore not clearly erroneous. As his participation did not involve the exercise of military power in any sense, it did not violate the Act.
 
 II
 
 5
 Huynh argues that the government failed to show that he was a manager or supervisor. "[I]n order for a defendant to receive an adjustment under Sec. 3B1.1(b) for his role as a manager or supervisor, the defendant must have managed or supervised at least one other participant." United States v. Barnes, 993 F.2d 680, 685 (9th Cir.1993) (quotation marks omitted), petition for cert. filed, (U.S. Apr. 1, 1994). Such an adjustment applies where the defendant "coordinated the procurement and the distribution of drugs from numerous suppliers." United States v. Varela, 993 F.2d 686, 691 (9th Cir.), cert. denied, 114 S.Ct. 232 (1993). "An enhancement may be proper where ... a defendant organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants." Id.
 
 
 6
 Huynh's offense level was increased three levels for his role in the offense because he obtained the Go Get Em, provided the crewmembers, and supplied the vessel with provisions. In addition, Huynh and two others accepted $109,500 for the use of the vessel and engaged in countersurveillance. The court found that Huynh was "actively involved in the planning and execution of one essential aspect of the total conspiracy which involved more than five participants, and acted in the capacity of a manager or supervisor[.]"
 
 
 7
 Unlike United States v. Mares-Molina, 913 F.2d 770, 773-74 (9th Cir.1990), and United States v. Hoac, 990 F.2d 1099, 1110-11 (9th Cir.1998), cert. denied, 114 S.Ct. 1075 (1994) on which Huynh relies, where the evidence showed only that the defendants managed businesses--not people, here, "by coordinating the activities of the other participants to the extent necessary to complete the transaction, [Huynh] organized people, not merely things." Varela, 993 F.2d at 692. Since Huynh "organized people, not merely things," id., the court's finding that he was an organizer and its three-level upward adjustment were not clearly erroneous.
 
 III
 
 8
 The district court departed upward six levels, finding that the number of aliens involved and the financial impact were aggravating circumstances of a kind or degree not adequately considered by the Sentencing Commission. Huynh argues that the court should not have considered the financial costs of prosecuting the case as an aggravating circumstance because the government chose to bring the vessel in rather than simply to arrest Captain Chen and turn the aliens away; he also urges that prosecution costs would be mitigated by forfeiture of the Ying Dong Ming and the Go Get Em. However, the district court's departure was based on the large number of illegal aliens and the attendant financial impact taking care of that number imposes--not on costs of prosecution.
 
 
 9
 As Huynh recognizes, the number of illegal aliens brought into the country is an aggravating factor. U.S.S.G. Sec. 2L1.1 (app. note 8) (1991). However, he contends that his sentence (33 months) should not have been three times higher than what it would have been at the low end of the applicable guideline range (10-16 months).
 
 
 10
 Applying the Lira-Barraza factors, we cannot say that the degree of departure was unreasonable. United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc). There were 136 aliens on board. It is consistent with what the 1992 edition of the Guidelines (not applicable to Huynh's sentence) provide, U.S.S.G. Sec. 2L1.1(b)(2) (1992) (offense level should be increased six levels for more than 100 aliens), and is justified given the extraordinary number of aliens involved.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Given our disposition, we do not decide whether the Act applies extraterritorially. See United States v. Roberts, 779 F.2d 565 (9th Cir.), cert. denied, 479 U.S. 839 (1986)