**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Shawn Douglas ARNELL, Defendant— Appellant.**

**United States of America, Plaintiff—Appellee,**

v.

**Benjamin McChesney, Defendant— Appellant.**

United States of America,
Plaintiff—Appellee,

v.

Michael McChesney, Defendant—
Appellant.

United States of America,
Plaintiff—Appellee,

v.

Wesley Wade Kindsfather, Defendant—
Appellant.

United States of America,
Plaintiff—Appellee,

v.

Allen Thomas Bramble, Defendant—
Appellant.

Nos. 04–30255, 04–30256, 04–30257,
04–30288, 04–30403.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 2006.

Decided June 29, 2006.

James E. Seykora, Esq., Office of the U.S. Attorney, Billings, MT, Jeffrey P. Singdahlsen, Esq., U.S. Department of Justice Appellate Section/Criminal Division, Washington, DC, for Plaintiff–Appellee.

Mark T. Errebo, Esq., Law Office of Mark T. Errebo, Esq., Mark D. Parker, Esq., Parker Law Firm, Jay F. Lansing, Esq., Moses Law Firm, Billings, MT, Palmer A. Hoovestal, Esq., Helena, MT, Allen Thomas Bramble, U.S. Penitentiary, Adelanto, CA, for Defendants–Appellants.

Before CANBY, GOULD, and BEA, Circuit Judges.

## MEMORANDUM *

Defendants Shawn Arnell, Allen Bramble, Benjamin McChesney, and Michael McChesney appeal their convictions on methamphetamine-related charges. Defendants Arnell, Bramble, and Wesley Kindsfather appeal their sentences. We have jurisdiction under 28 U.S.C. § 1291. For the reasons stated below, we affirm Defendants' convictions; vacate Arnell's sentence and remand for resentencing; remand Kindsfather's sentence pursuant to *Ameline;* [1] and affirm Bramble's sentence.

Because the parties are familiar with the facts and procedural history of the case, we do not recite them here except as necessary to our decision.

## I. Sufficiency of the Evidence Claims

### A. Variance

■ First, Arnell and M. McChesney claim there was a fatal variance between the single conspiracy alleged in the indictment and the multiple conspiracies Defendants claim the government proved at trial. "The issue of whether a single conspiracy has been proved is a question of the sufficiency of the evidence." *United States v. Duran,* 189 F.3d 1071, 1078 (9th Cir.1999) (citing *United States v. Bibbero,* 749 F.2d 581, 586 (9th Cir.1984)).

Accordingly, viewing the evidence in the light most favorable to the government, we determine whether any rational trier of fact could find that "an overall agreement existed among the conspirators." *Duran,* 189 F.3d at 1080 (citation omitted).

Here, there was ample evidence of a single conspiracy to distribute methamphetamine. *See, e.g., United States v. Arbelaez,* 719 F.2d 1453, 1457–59 (9th Cir. 1983); *United States v. Perry,* 550 F.2d 524, 529 (9th Cir.1977). Specifically, we find support for the jury's verdict in the following facts proved at trial: (1) the repeated shipments of methamphetamine into Montana through a stable distribution network; (2) the methamphetamine supplier's fronting [2] of multiple-pound quantities to the distributors; (3) the assumption by successive distributors of the debt for the fronted methamphetamine; (4) the regular pattern of sales, including fronting, by the distributors to the wholesalers in the distribution chain; and (5) the cooperation among co-conspirators in transporting large sums of money and large quantities of methamphetamine.

### B. Conspiracy Convictions

■ Several Defendants challenge their individual conspiracy convictions on the ground of insufficient evidence. "Once a conspiracy has been established, evidence of only a slight connection with it is sufficient to establish a defendant's participation in it." *United States v. Castaneda,* 16 F.3d 1504, 1510 (9th Cir.1994). Furthermore,

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. *United States v. Ameline,* 409 F.3d 1073 (9th Cir.2005) (en banc).

2. "Fronting" refers to sale of drugs on credit, which implies that the supplier depends for repayment on the resale of the drugs.

the government need not show direct contact or explicit agreement between the defendants. It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that his own benefits were dependent upon the success of the entire venture.

*Arbelaez,* 719 F.2d at 1458–59 (citations and alterations omitted).

■ There was ample evidence to support Arnell's conspiracy conviction. Arnell served as a liaison between the supplier and the distributors on the first four or five sales. He also assisted the supplier by picking up drug proceeds and accompanying the supplier on a trip to Montana to deliver methamphetamine to Bramble. In exchange for his help, Arnell received small amounts of methamphetamine or cash on at least two occasions. In addition to the benefits Arnell derived, Arnell told the supplier the methamphetamine was going to Montana and explicitly agreed to help the distributors find a source who could provide pound quantities of methamphetamine. Taken together, this evidence is more than sufficient to sustain Arnell's conviction. *See, e.g., United States v. Meyers,* 847 F.2d 1408, 1413 (9th Cir.1988); *United States v. Thomas,* 586 F.2d 123, 127–29 (9th Cir.1978).

There was also ample evidence that M. McChesney knowingly participated in the conspiracy. M. McChesney regularly purchased resale quantities of methamphetamine from the distributors, received this methamphetamine on credit, and resold it to an established customer. Such a regular pattern of large purchases alone is sufficient to sustain his conviction. *See United States v. Montgomery,* 150 F.3d 983, 1002 (9th Cir.1998) ("transaction in large quantities with regularity" may permit the inference that defendant was a coconspirator) (citation omitted); *see also*

*United States v. Smith,* 609 F.2d 1294, 1300 (9th Cir.1979); *United States v. Baxter,* 492 F.2d 150, 160–64 (9th Cir.1973). In addition, one of the distributors paid a quota to M. McChesney when he sold directly to M. McChesney's customer, and M. McChesney collected a $3,500 drug debt for this distributor.

■ Finally, the evidence of B. McChesney's participation, though not ample, was sufficient to establish his requisite slight connection to the conspiracy. When we resolve conflicts in the evidence in the government's favor, *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the record shows that B. McChesney purchased four ounces of methamphetamine from one of the distributors over the course of several months. On one occasion, B. McChesney told the distributor he planned to resell methamphetamine to another person, and, in fact, sold an eighth-ounce of methamphetamine to her. He owed a drug debt to the distributor, which permits the inference that B. McChesney was fronted methamphetamine and thus was a "trusted retail outlet" of the distributor. *Perry,* 550 F.2d at 529.

## C. Convictions on Substantive Counts

M. McChesney and B. McChesney challenge the sufficiency of the evidence supporting their convictions for substantive crimes of drug possession. First, M. McChesney claims he entered the conspiracy after some of the substantive counts had been committed. However, there was sufficient evidence for the jury to find that M. McChesney joined the conspiracy at its inception. The distributor began selling methamphetamine to M. McChesney in summer 2000, and M. McChesney's customer began purchasing from him in late 2000. Coupled with the regular pattern of sales that later arose, this evidence permit-

ted the finding that M. McChesney was a member of the conspiracy when it started in November 2000. Accordingly, we find sufficient evidence to support all of M. McChesney's substantive convictions under a *Pinkerton* [3] theory.

■ Next, B. McChesney claims the substantive count of which he was convicted was unforeseeable to him because it occurred after his involvement in the conspiracy ceased. However, possession of methamphetamine is clearly a foreseeable consequence of participation in the conspiracy charged in this case. Absent withdrawal from the conspiracy, "[B. McChesney] is criminally liable for any underlying substantive offenses committed by co-conspirators during [his] membership in the conspiracy." *See United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir.1992). Here, the jury declined to find that B. McChesney had withdrawn from the conspiracy and this verdict is supported by sufficient evidence. Accordingly, we find sufficient evidence to support B. McChesney's substantive conviction on a *Pinkerton* theory.

## II. Evidentiary Rulings

■ First, Defendants claim the admission of Kindsfather's redacted confession violated their rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). But Kindsfather's confession was properly redacted and made no mention of any of the defendants.[4] While Defendants could be held vicariously liable for Kindsfather's acts under *Pinkerton*, the confession became incriminating only when linked with other evidence at trial. Therefore, the admission of Kindsfather's confession did not violate *Bruton*. *See Richardson v. Marsh*, 481 U.S. 200, 208, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).[5]

■ Second, Defendants claim the district court's limitation on their cross-examination of the cooperating witnesses violated the Confrontation Clause. Specifically, the district court precluded any questioning about the length of the sentences these witnesses might have received, if they had not cooperated. Provided there is "an adequate opportunity to expose [each witness'] potential bias and motive in testifying," such a limitation on cross-examination lies within the district court's discretion. *United States v. Dadanian*, 818 F.2d 1443, 1449 (9th Cir.1987), *modified in diff. part on reh'g*, 856 F.2d 1391 (9th Cir.1988). The opportunity afforded Defendants to cross-examine the cooperating witnesses was extensive enough that *Dadanian* is controlling here. Defendants were allowed to ask the cooperating witnesses about the charges dismissed in ex-

---

**3.** *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The jury was instructed on the elements of *Pinkerton* liability.

**4.** For the first time in his reply brief, M. McChesney argues the confession was improperly redacted because it retained two references to unidentified "people." We find this argument to be waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir.1999) ("[A]rguments not raised by a party in its opening brief are deemed waived.").

**5.** Bramble's argument that the admission of Kindsfather's confession constitutes improper vouching fails because it also depends on the effect of the confession when combined with the other evidence introduced at trial. *See Richardson*, 481 U.S. at 208, 107 S.Ct. 1702. B. McChesney's argument that he had the right to cross-examine the agent who related Kindsfather's confession to the jury to establish that he was not named in the confession fails because Kindsfather's properly redacted confession was not admitted as evidence against B. McChesney. *See id.* at 206, 107 S.Ct. 1702. Therefore, B. McChesney had no right to confront the witness who related Kindsfather's confession to the jury.

change for their testimony and the grants of immunity under which they testified. Defendants were also allowed to question these witnesses about the provisions of their plea agreements relating to Rule 35, and to establish that the United States Attorney had sole discretion to determine whether they were telling the truth and proffered substantial assistance.[6] Accordingly, we find no abuse of discretion in the district court's limitation on cross-examination into the maximum sentences the cooperating witnesses faced. *See Dadanian,* 818 F.2d at 1449.

▮ Third, Arnell and M. McChesney claim the district court's limitation of their cross-examination on the government's decision not to require that cooperating witnesses take polygraph examinations violated the Confrontation Clause. However, we have held that a limitation of cross-examination on this subject is within the district court's discretion. *See United States v. Wills,* 88 F.3d 704, 714 (9th Cir. 1996). We find no abuse of discretion here.

▮ Fourth, M. McChesney and B. McChesney claim the district court erred in allowing a cooperating witness to refresh his recollection with a report prepared by the FBI. "But[] the law is clear that recollection can be refreshed from documents made by persons other than the witness." *United States v. Landof,* 591 F.2d 36, 39 (9th Cir.1978).

▮ Fifth, B. McChesney claims the district court abused its discretion by denying his motion for a mistrial. A witness testified that he met B. McChesney when B. McChesney got out of prison. The district court interrupted the witness,

warned him not to give such testimony, and promptly read the jury a curative instruction. Given the brief, inadvertent nature of the witness' testimony, the district court did not abuse its discretion in refusing to declare a mistrial. *See United States v. Ezzell,* 644 F.2d 1304, 1305–06 (9th Cir.1981).[7]

### III. Other Conviction–Related Claims

First, Arnell and M. McChesney claim the jury instructions were erroneous. The instructions listed violation of the federal drug laws, 21 U.S.C. § 841 *et seq.,* as the object of the conspiracy, and the concealment of the conspiracy as a means to this end. Therefore, Defendants' claim that the instructions included a non-federal object has no merit. We likewise reject M. McChesney's claim that the instructions were misleading because they failed to distinguish between distribution and possession with intent to distribute. We do not perceive any distinction between these two goals as objects of a conspiracy.

▮ Second, Arnell challenges the sufficiency of evidence that venue for his substantive convictions was proper in Montana. Assuming Arnell's Rule 29 motion embraced a challenge to venue, we find venue to be proper because there was sufficient evidence that Arnell aided and abetted the distributors' acts of drug possession in Montana. *See United States v. Mendoza,* 108 F.3d 1155, 1156 (9th Cir. 1997) (for venue purposes, "the crime of drug possession with intent to distribute, or aiding and abetting such possession, occurs where the principal commits it.").

---

6. Accordingly, Defendants' reliance on *United States v. Schoneberg,* 396 F.3d 1036, 1043 (9th Cir.2005), is misplaced.

7. A fortiori, we also reject B. McChesney's claim that another remark by this witness

required a mistrial, when the testimony was less prejudicial and B. McChesney did not raise it as a ground for mistrial to the district court.

Third, M. McChesney claims that *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), violates the prohibition on federal common law crimes. We cannot entertain such a claim. *See, e.g., Hart v. Massanari,* 266 F.3d 1155, 1171–73 (9th Cir.2001).

Fourth, Arnell and B. McChesney claim the cumulative effect of the errors at trial mandates reversal. But since they have failed to identify a single error, they have no basis for asserting cumulative error. *See United States v. Gutierrez,* 995 F.2d 169, 173 (9th Cir.1993).

## IV. Sentencing

### A. Arnell

■ Arnell contends the district court clearly erred in enhancing his sentence as a manager or supervisor under U.S.S.G. § 3B1.1(b). The commentary to the Sentencing Guidelines provides in relevant part:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization

UNITED STATES SENTENCING GUIDELINES MANUAL § 3B1.1, cmt. n. 2 (2005). Thus, a manager or supervisor enhancement may be upheld if (1) the defendant exercised control over one or more participants, or (2) coordinated the activities of the conspiracy. *See id.;* UNITED STATES SENTENCING GUIDELINES MANUAL app. C amend. 500 (2005); *United States v. Varela,* 993 F.2d 686, 691–92 (9th Cir.1993) (upholding enhancement "where the defendant coordi-

nated the procurement and distribution of drugs from numerous suppliers").

Here, the record does not support the district court's finding Arnell to be a manager or supervisor. The court enhanced Arnell's sentence because he introduced the distributors to the supplier, and because, without this action, the conspiracy would never have occurred. We have previously rejected such "but-for" logic as insufficient to support a manager or supervisor enhancement. *See United States v. Lopez–Sandoval,* 146 F.3d 712, 716–17 (9th Cir.1998) (citing *United States v. Harper,* 33 F.3d 1143, 1151 (9th Cir.1994)). Further, we find no evidence Arnell coordinated the procurement and distribution of drugs, as in *Varela;* rather, Arnell served as a liaison and courier at the direction of others. Since this enhancement was clearly erroneous, we vacate Arnell's sentence and remand for a full re-sentencing. *See United States v. Cantrell,* 433 F.3d 1269, 1279–80 (9th Cir.2006).

### B. Kindsfather

While the government argues Kindsfather waived the right to appeal his sentence, we have held an identical waiver provision not to waive direct review. *See United States v. Speelman,* 431 F.3d 1226, 1230–31 (9th Cir.2005). Further, there is no "objective proof on the record," *United States v. Kamer,* 781 F.2d 1380, 1387 (9th Cir.1986), that would support a different reading of Kindsfather's waiver here.

■ Like Arnell, Kindsfather challenges the enhancement of his sentence as a manager or supervisor. But the record shows that Kindsfather supervised another participant's criminal activities and, by assuming the debt to the supplier, could be found to have taken responsibility for the

distribution network. Accordingly, the district court did not clearly err in applying this enhancement to Kindsfather. With regard to Kindsfather's claim under *Booker*,[8] since we cannot reliably determine whether the sentence would have differed materially had the Guidelines been advisory, we order a limited remand pursuant to *Ameline*.

### C. Bramble

 Bramble first challenges the enhancement of his sentence as a manager or supervisor. Bramble assumed Kindsfather's debt to the supplier and could, therefore, be found to be a manager or supervisor of the distribution network. Next, Bramble claims it was clear error not to reduce his sentence for acceptance of responsibility. This is not, however, one of those "rare cases" where "a defendant can benefit from accepting responsibility for criminal conduct despite requiring trial." *United States v. Daychild*, 357 F.3d 1082, 1100 (9th Cir.2004). Third, Bramble claims the district court's sentence violated his Sixth Amendment rights under *Booker*. The district court imposed an alternative sentence of the same length under the assumption that the Guidelines would be invalidated in their entirety. "Any error in [Bramble's] sentencing was harmless, because the district court adequately conveyed that it would impose the same sentence in the absence of mandatory sentencing enhancements." *United States v. Christopher*, 415 F.3d 590, 592 (6th Cir. 2005); *see also United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir.2006) (finding no constitutional *Booker* error where "the district court provided an alternative sentence . . . that correctly anticipated the holding of *Booker* and exercised

discretion in imposing a sentence within the statutory range."). Since the *Booker* error was harmless and Bramble does not challenge the reasonableness of his sentence, we affirm.

In summary, the convictions of Arnell, Bramble, M. McChesney, and B. McChensey are **AFFIRMED**; Arnell's sentence is **VACATED** and the case **REMANDED FOR RESENTENCING**; Kindsfather's sentence is **REMANDED** pursuant to *Ameline*; and Bramble's sentence is **AFFIRMED**.

---

8. *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).